### SCOTTSDALE INSURANCE COMPANY, Plaintiff,

v.

### Beverly ROUMPH, et al., Defendants.

### No. 97–CV–73396–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 20, 1998.

---

Thomas L. Auth, Jr., Southfield, MI, for Plaintiff.

Susan L. Lichterman, Detroit, MI, Geoffrey Feiger, Southfield, MI, David J. Cooper, W. Bloomfield, MI, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT ROUMPH'S MOTION TO DISMISS ON ABSTENTION GROUNDS AND DISMISSING THIS ACTION WITHOUT PREJUDICE

ROSEN, District Judge.

## I. INTRODUCTION

This insurance declaratory judgment action filed by Plaintiff Scottsdale Insurance Company ("Scottsdale") arises out of a Wayne County Circuit Court tort action brought by Defendant Beverly Roumph on behalf of her minor daughter, Lavina Roumph, against The Children's Center and a number of employees of The Children's Center and/or Lula Belle Stewart Center (the "Roumph action") stemming from the sexual molestation of Lavina Roumph by a 12–year–old boy, Keith Kelley, Jr., who was placed by The Children's Center as a foster child in the Roumph home. All of the defendants except for Beverly Roumph have been dismissed from this action by stipulation of the parties.

At issue in this declaratory judgment action is the effect of a "sexual misconduct" endorsement contained in The Children's Center's insurance policy.

Beverly Roumph has moved for dismissal without prejudice on abstention grounds contending that the interpretation of the "sexual misconduct" provisions of the insurance policy is "fact driven" and that the state court—in which all discovery was conducted and which earlier this year heard trial evidence concerning the sexual molestation of Lavina Roumph and Keith Kelley's foster care placement in the Roumph home—is in the best position to construe the subject endorsement in the context of the facts of the case.

Scottsdale, The Children's Center's insurer, has moved for summary judgment on the merits. In response, Defendant Roumph has filed a counter-motion for summary judgment on the merits.

Having reviewed and considered the parties briefs and supporting documents, and having heard the oral arguments of counsel on July 30, 1998, the Court is now prepared to rule on the pending motions. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTUAL BACKGROUND

In February 1998, Beverly Roumph, individually and as next friend for her minor daughter, Lavina Roumph, obtained an $8 million jury verdict in Wayne County Circuit Court arising out of a sexual assault that was committed by Keith Kelley, Jr., a foster care child placed by The Children's Center in the Roumph home. The Second Amended Complaint in the Roumph action alleged negligence and gross negligence against The Children's Center and its agents and employees, including The Lula Belle Stewart Center, Inc. and a number of individual employees of both agencies,[1] for its placement of Keith

---

1. Ms. Roumph alleged in her Wayne County Complaint that Defendants Lula Belle and The Children's Center had an agreement between them known as a "borrowed bed" program. The Complaint further alleged that The Children's Center could not find a foster care placement for Keith Kelley within its own agency and, therefore, resorted to its "borrowed bed" agreement with the Lula Belle Stewart Center. It was allegedly pursuant to the "borrowed bed" agreement that Keith Kelley was placed with Beverly Roumph, who was licensed to shelter foster children in her home by the Lula Belle Stewart Center. Thus, Roumph's theory was that the two

Kelley in the Roumph household without appropriate investigation, without notifying Mrs. Roumph of Kelley's prior history of sexual misconduct and for failing to provide Kelley with appropriate psychiatric/psychological treatment, all of which led to Lavina Roumph's injuries. Specifically, the Second Amended Roumph Complaint alleged:

34. That the Defendants, in disregard of their duties and obligations to Plaintiff, are liable for negligence and/or gross negligence in the following particulars which include, but are not limited to:

a. Failure to disclose pertinent information regarding the potential safety and welfare of the foster family;

b. Failure to properly warn foster parent of foster child's history, including said foster child's history of being sexually raped and history of alleged molestation of other children;

c. Failure to properly place foster child in an appropriate home;

d. Failing to properly recommend, and follow through upon, appropriate psychiatric/psychological treatment for Keith Kelley, Jr., so as to prevent him from engaging in further similar conduct and/or from "acting out" on others;

e. Failing to timely and properly review all pertinent information contained in the file of Keith Kelley, Jr., which would have informed Defendants of Keith Kelley's propensity to sexually molest other children; and

f. Any and all other acts and/or omissions that may be construed as negligence and/or gross negligence that may be revealed during the course of discovery.

Scottsdale Insurance Company provided a defense to The Children's Center in the Roumph action subject to a reservation of rights. Specifically, Scottsdale invoked the

insurance policy's "sexual misconduct" endorsement, which provides for a sub-limit for professional liability in the amount of $100,000 per claim for "injury arising out of any one claim for 'sexual misconduct.'"[2] The endorsement contains the following definition of "sexual misconduct":

6. "Sexual misconduct" means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in a sexual act, *arising out of the professional treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured,* whether committed by, caused by or contributed to by failure of any insured to:

(1) properly train, hire or supervise any employees, or;

(2) properly control, monitor or supervise the treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured.[3]

At the beginning of the trial in the Roumph action, The Children's Center and Beverly Roumph entered into a stipulation on the record whereby The Children's Center admitted the liability alleged against it in the Second Amended Complaint. In return, Ms. Roumph stipulated to limit any recovery she may have to the available proceeds of the insurance policy. Specifically, the parties stipulated as follows:

One, Children's Center will admit liability. Two, the case will proceed against Children's Center as to damages only. Three, the individual defendants, Wheeler, Skowronski and Potje will be dismissed with prejudice without a release.... Four, **plaintiffs will not seek to enforce any judgment against Children's Center over and above the insurance policy limits.** Five, defendants Wheeler, Skowronski and Potje were employees of the Children's

foster care agencies acted together in the placement of Keith Kelley (and were jointly and severally liable for Lavina Roumph's damages.). During the course of the trial in the state court, Ms. Roumph reached a settlement of $1 million with the Lula Belle Stewart Center ($1 million being the limit of its insurance policy) and the case, therefore, proceeded on the Roumphs' damage claims against The Children's Center. (All of the

individual defendants were dismissed from the state court action prior to trial.)

2. The policy has a general liability $3 million limit.

3. The italicized portion of this definitional provision is what is at issue in this declaratory judgment action.

Center during their respective periods of employment and acted within the scope of employment as to matters in this action....

[N]othing contained in this agreement eviscerate[s] any coverage under the existing policy, including any taxable costs or interest.

**This agreement is predicated upon the representation that Children's Center has a liability policy with a $3 million general limit and a $100,000 sexual misconduct limit that is covering this occurrence** and that the only claim regarding the extended coverage is that claim currently stated in the pending declaratory judgment action.

[See Excerpt of Transcript of February 2, 1998 Proceedings before Honorable Kathleen MacDonald, at part 1 of Plaintiff's Ex. C]

The case against The Children's Center, thus, proceeded on the issue of the plaintiffs' damages only. During the course of trial, outside the presence of the jury, the state court permitted counsel for Ms. Roumph to take some discovery testimony pertinent to insurance coverage issues. This Court has not been provided with a full transcript of the trial proceedings or of all of the insurance discovery testimony. The only transcript excerpt of testimony provided is that of the designated representative of The Children's Center, Grenae Dudley, the agency's deputy director.[4]

Arguing that the issues presented are fact driven, and pointing out that the state court has had the benefit of having heard the trial and insurance coverage discovery evidence, Defendant Roumph contends that the state court is in a better position to decide the insurance coverage issues presented in this federal action. Accordingly, Defendant Roumph has moved for the Court to abstain from exercising its discretionary declaratory judgment jurisdiction and dismiss this action without prejudice. Plaintiff Scottsdale counters that because this action is not "premature" in that the state action has been tried and a judgment entered (although post-judgment motions for new trial and remittitur remain pending and, therefore, the case remains open), the Court should not dismiss this action and permit the state court to decide its declaratory judgment claims. Scottsdale claims that

"Upon transcription of the trial testimony in the state court action, this court will be in a position to determine the applicability of the 'sexual misconduct' endorsement. A declaratory judgment premised upon that testimony would indeed settle the controversy between the parties particularly given that Roumph has agreed to satisfy the underlying judgment only upon the available insurance proceeds."

[Plaintiff's Brief in Response to Defendants' Motion to Dismiss, p. 12]

Thus, in opposing dismissal in its Response Brief, Plaintiff Scottsdale relied heavily on the fact that a full transcript of the trial testimony will enable this Court to determine the "fact driven" issues pertaining to the applicability of the "sexual misconduct" endorsement. However, no such transcript has

---

**4.** Ms. Dudley's testimony concerns some of the terminology used in the "sexual misconduct" definition in the Scottsdale insurance policy:

Q: Are you familiar with any facts whatsoever which would indicate to you, or do you have any proof whatsoever of any kind anywhere, any place, that Lavinia [sic] Roumph was a client of the Children's Center?

A [by Ms. Dudley]: No.

Q: Do you have any evidence whatsoever anywhere, anyplace, anyhow that Lavinia [sic] Roumph was a patient of the Children's Center?

A: No.

Q. Do you have any evidence whatsoever any time anywhere, anyplace, that at the time Lavinia [sic] Roumph was sodomized, that would be August 3rd 1994, I believe, that she had been entrusted to your care for any purpose whatsoever by anyone?

A: No.

Q: Do you have any evidence to that effect?

A: No.

Q: As far as you know, there is no connection of any kind between in terms of either being a patient, in terms of being a client, or having been entrusted to your care, there is no connection of Lavinia [sic] Roumph and the Children's Center?

A: Correct.

Q: And that's at the time she was sodomized; am I correct?

A: Correct.

[See Excerpt of Transcript of February 11, 1998 Proceedings before Honorable Kathleen MacDonald at Part 2 of Plaintiff's Ex. C.]

ever been provided to the court. As indicated, the Court has only been provided two brief transcript excerpts—(1) the transcript of the February 2, 1998 on the record stipulation of the parties in which Roumph and The Children's Center stipulated to limit recovery to the limits of the insurance policy and (2) the February 11, 1998 transcript of the discovery testimony of Grenae Dudley (regarding Lavina Roumph, the rape victim, never having been a "client" of The Children's Center). No other transcript of testimony which might aid in the Court's determination of the applicability of the "sexual misconduct" endorsement has been provided. At oral argument, however, Scottsdale took the position that a trial transcript is unnecessary claiming that the Court can decide this matter by reviewing the insurance policy language alone.

### III. *ISSUES PRESENTED*

As noted above, the key to the determination of whether the "sexual misconduct" endorsement applies to the Roumph matter lies in the construction of the phrase *"arising out of **the professional treatment and care** of any client, patient, or any other person whose care has been entrusted to the named insured"* as contained in the "sexual misconduct" definition in the insurance policy. Specifically, a determination must be made as to what is meant by the terms "professional treatment and care" as used in the policy and also, what is meant by the terms "client of The Children's Center", "patient of The Children's Center" and "person whose care has been entrusted to the Children's Center". With respect to the Roumph matter in particular, a factual determination must be made as to the following:

(1) Was Keith Kelley, within the meaning of the insurance contract, a "client" or "patient" of The Children's Center whose care had been "entrusted to" The Children's Center? (2) Did The Children's Center provide Keith Kelley "professional treatment and care"?

Defendant Roumph maintains that The Children's Center's actions in placing Keith Kelley in a foster home does not amount to "professional treatment and care" under the policy. She further maintains that, inasmuch as Keith Kelley was placed with a foster family, the care of Keith Kelley was "entrusted to" the foster parents, not The Children's Center.

### IV. *DISCUSSION*

### A. *THE COURT SHOULD ABSTAIN FROM DECIDING THIS DECLARATORY JUDGMENT ACTION AND LEAVE IT TO THE STATE COURT WHICH TRIED THE UNDERLYING CASE TO DECIDE THE MATTER.*

The Federal Declaratory Judgment Act provides that federal courts "may declare the rights and other legal relations of any interested party seeking" a declaration in a controversy over which the court otherwise has jurisdiction. 28 U.S.C. § 2201(a). The Supreme Court has emphasized that this statute does *not* give the litigant an absolute right to a declaratory judgment in the district court; rather it is a grant of power to the court whereby the court, *may*, in its discretion, exercise jurisdiction over such a controversy. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995); *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, n. 17, 113 S.Ct. 1967, 1974 n. 17, 124 L.Ed.2d 1 (1993); *Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). *See also, Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

As the Court explained in *Wilton v. Seven Falls Co., supra:*

Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.... The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.... When all is said and done, we have concluded that "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concern-

ing the functions and extent of federal judicial power." ...

\* \* \* \* \* \*

"[T]here is nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court" to hear a declaratory judgment action. By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. **Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion,** to stay or to **dismiss an action seeking a declaratory judgment *before trial or after all arguments have drawn to a close.*** In the declaratory judgment context, **the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.**

115 S.Ct. at 2143 (citations omitted and emphasis added).

Consistent with the principles enunciated by the Supreme Court, in a series of cases dating back to 1984, the Sixth Circuit has repeatedly found that when a state action is pending or when trial has been completed in a state court, generally that court is in a better position than a federal district court to decide an insurance declaratory judgment action that involves underlying factual issues. However, the appellate court has emphasized that there is no *per se* rule against a district court's entertaining a declaratory judgment action. *Allstate v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990). Rather, it has instructed lower courts that they may entertain a diversity jurisdiction declaratory judgment case if "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and [if] it will terminate and afford relief from the uncertainty, insecurity, and contro-

versy giving rise to the proceeding." *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984); *Allstate v. Mercier, supra; Omaha Property & Casualty Insurance Co. v. Johnson,* 923 F.2d 446, 447–48 (6th Cir.1991). In applying this general standard, the Sixth Circuit considers five factors:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Grand Trunk, supra,* 746 F.2d at 326; *Allstate v. Mercier, supra; Omaha Property & Casualty, supra.*[5]

Applying the foregoing factors in cases similar to the instant action, the Sixth Circuit has repeatedly found it inappropriate for the district courts to entertain insurance declaratory judgment actions.

For example, in *Allstate Insurance Co. v. Mercier, supra,* the district court entered summary judgment in favor of the plaintiff insurer, Allstate, declaring that, based upon its construction and interpretation of a motor vehicle exclusion contained in the Allstate Homeowners Policy at issue, the insurer, Allstate, did not owe any insurance coverage to the Merciers who had been sued in a state court action for the death of Wesley Allmand

---

**5.** To these five factors, this Court, guided by the federalism concerns reflected in the Supreme Court's *Wilton* decision and the policy underpinnings of the Sixth Circuit's *Mercier* decision [see discussion *infra*], would add several of its own:

1. whether the underlying factual issues are important to an informed resolution of the case;

2. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

3. whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

which resulted from injuries sustained in an automobile accident. The accident was caused by a teenager, Gary Jaynes, who was driving while intoxicated. The complaint in the state action alleged that the Merciers were liable for Allmand's injuries because they had furnished alcohol to Gary Jaynes in violation of Michigan state law. No discovery concerning the underlying accident was taken in the federal court action. Nonetheless, the district court determined that, based upon the allegations of the complaint and the facts alleged in the summary judgment pleadings, the motor vehicle exclusion relieved Allstate of its obligations under the insurance policy because it found that "the tort was triggered by the negligent operation of a motor vehicle."

The Sixth Circuit determined that the district court improvidently exercised its discretionary authority to entertain Allstate's declaratory judgment action and, therefore, **reversed and remanded** the action with instructions to dismiss the complaint. In so doing, the court explained:

> **The record before us is virtually devoid of facts about the underlying tort action. We have only the complaint filed** [**in the state court**] by Patricia Allmand against Mercier and Mair; **there are no depositions or other discovery documents.** We cannot ascertain from the record where or when the defendants allegedly furnished liquor to Jaynes; in particular, whether this occurred on one of the insured premises or elsewhere....

> These facts would necessarily be developed at a trial of the tort action, and may have a direct bearing on the determination of whether the insuring clause of the homeowners policies, or the exclusions, control Allstate's obligations.

> Courts should not be required to decide rights and other legal relations in a vacuum.... The language of the policy is broad, but ... we cannot say with certainty that those exclusions preclude a finding of coverage in the present case. Without any factual record, there is a real possibility that the district court's declaration of no coverage would conflict with a state court's

determination of the coverage question after being informed of the facts.

> \*    \*    \*    \*    \*    \*

> .... The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation. Finally there is an alternative remedy [under Michigan Court Rule 2.605] which is better or more effective. We have indicated that Michigan provides such a remedy in the very court where the state tort action is pending.

> \*    \*    \*    \*    \*    \*

> It is true that in the present case the federal declaratory judgment action does not parallel a state court action arising from the same facts in the sense that different legal issues are presented by the pleadings. Nevertheless, the federal action does parallel the state action in the sense that the ultimate legal determination in each depends upon the same facts. And there is an alternative state remedy by which the legal determination sought in the federal declaratory action may be made **on the basis of a well-developed factual record, rather than the basis of a barren record.**

913 F.2d at 278–279 (citations and punctuation omitted; emphasis added).

As in the *Allstate* case, the record before this Court is equally devoid of facts concerning what the placement of Keith Kelley in the Roumph household by The Children's Center and/or the Lula Belle Stewart Center entailed and whether or not any medical or psychological treatment or counseling was provided to Kelley prior to his rape of Lavina Roumph. On the other hand, the tort facts have been fully aired in the state court action, both by exhaustive discovery prior to trial and in the trial itself. The state court which heard the proofs in the underlying action is uniquely positioned to construe the subject endorsement in the context of the facts of the case. As the *Grand Trunk* court observed, federal courts should avoid the "gratuitous interference with the orderly and comprehensive disposition of a state court

litigation." 746 F.2d at 326, quoting *Brill-hart v. Excess Ins. Co., supra,* 316 U.S. at 495, 62 S.Ct. at 1175.

Furthermore, Scottsdale has indicated that there are no reported decisions in Michigan or elsewhere construing the language of its "sexual misconduct" endorsement and in its independent research of the matter, this Court has not found any, either. In *Omaha Property & Casualty Insurance Co. v. Johnson,* 923 F.2d 446 (6th Cir.1991), the Sixth Circuit faced a similar issue and held:

> For the federal courts to preempt the right of the state court to rule on a previously undetermined question of state law, more must be present than a desire of the insurance company to avoid the possibility of an unfavorable ruling in state court by convincing the federal court to rule first.
>
> Accordingly, we find that the declaratory judgment was improvidently granted. We vacate the order granting summary judgment and remand to the District Court with instructions to dismiss the complaint for declaratory judgment.

923 F.2d at 448. *See also, Empire Indemnity Insurance Co. v. Specialized Foster Care Services, Inc.,* 908 F.Supp. 483 (N.D.Ohio 1995) (applying the five *Grand Trunk* factors and finding that a determination of rights under the insurance policy and its sexual battery and abuse exclusion involved issues of fact, the court dismissed the declaratory judgment action on abstention grounds.)

Turning specifically to application of the five *Grand Trunk* factors, as well as those identified by this Court above, to this particular case, the Court finds that taken together the factors weigh against entertaining jurisdiction over this matter. The first factor weighs against the federal court exercising jurisdiction. Although it is true that Ms. Roumph stipulated in the state court action not seek to enforce her judgment against The Children's Center beyond the limits of the insurance policy, that stipulation even coupled with any decision here would not "settle" the matter as the parties have indicated that The Children's Center intends to proceed with an appeal of the jury verdict will be taken in the Michigan Court of Appeals.

As to the second factor, while this factor in isolation would appear to weigh in favor of federal jurisdiction as a decision here would "clarify the legal relations" between Scottsdale and its insured, as the court in *Omaha Property & Casualty* observed,

> Even if the district court's ruling had clarified rather than confused the legal relations of the parties, ... this clarification would come at the cost of "increasing the friction between our federal and state courts and improperly encroaching upon state jurisdiction."

923 F.2d at 448, quoting *Allstate v. Mercier,* 913 F.2d at 279. Thus, taking in tandem the second factor and the fourth factor (whether a federal decision would increase the friction between federal and state courts and encroach on state jurisdiction), the Court finds the scales tip in favor of declining jurisdiction. As the court stated in *American Home Assurance Co. v. Evans,* 791 F.2d 61, 63 (6th Cir.1986), "We question the need for such declaratory judgments in federal court when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner."

With regard to the third *Grand Trunk* factor—whether the declaratory remedy is being used merely for the purpose of "procedural fencing" of for a *res judicata* advantage—while it appears that there may have ben a race to the federal court, this is not clear from the record. Therefore, the court does not find that this factor tips the scales in either direction.

As for the fifth *Grand Trunk* factor—whether there is an alternative remedy that is better or more effective—as indicated above, Michigan provides a mechanism for bringing declaratory judgment actions in state court. Although Scottsdale is not a "party" in the underlying tort action, by court rule, Michigan provides a procedure for obtaining a declaration of "the rights and other legal relations of an interested party seeking a declaratory judgment." M.C.R. 2.605. Pursuant to this Rule, declaratory judgments may be rendered by a Michigan court of record "in a case of actual controver-

sy within its jurisdiction." *Id.* Thus, Scottsdale can present the issues it has brought to this Court in a separate action to the same court which heard the underlying tort action.[6]

Consideration of the additional factors which this Court identified in note 5, *supra,* underscores why the state court is a more appropriate forum than the federal court for this action. First, it is clear that the underlying factual issues concerning The Children's Center's handling of Keith Kelley's foster care placement with the Roumph family are important to an informed resolution of the insurance declaratory judgment action. Second, the state court has the benefit of a fully-developed factual record concerning the underlying tort action, and is, therefore, in a far better position than this federal court to evaluate those factual issues. Finally, no federal common or statutory law is called into question in the declaratory judgment action. Only state law insurance contract interpretation questions are presented.

For all of these reasons, this Court believes that the Michigan court would be in a superior position to address the issues pertaining to Scottsdale's request for a declaration of rights.

### CONCLUSION

For all of the reasons discussed above in this Opinion,

IT IS HEREBY ORDERED that Defendant Roumph's Motion Requesting The Court to Abstain from Exercising Discretionary Jurisdiction be, and hereby is, GRANTED. Accordingly,

IT IS FURTHER ORDERED that this case be, and hereby is, DISMISSED without prejudice to the parties' rights to proceed with a declaratory judgment action in the state court.[7]

---

**6.** M.C.R. 8.111(D), provides for assignment of cases "arising out of the same transaction or occurrence" to the same judge. Thus, the declaratory judgment action would be assigned to the same judge who heard the underlying tort action.

---

**7.** In light of the Court's decision to decline to exercise jurisdiction over this matter, the parties' cross-motions for summary judgment on the merits are dismissed without prejudice.