RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0124P (6th Cir.)
File Name: 03a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

NORTHLAND INSURANCE
COMPANY,

      *Plaintiff-Appellee,*

    *v.*

STEWART TITLE GUARANTY
COMPANY,

      *Defendant-Appellant,*

CAILU TITLE CORPORATION,
DONALD G. SARE, JR., and
KELLY L. SARE,

      *Defendants.*

No. 01-1729

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 00-00280—Wendell A. Miles, District Judge.

Argued: October 15, 2002

Decided and Filed: April 25, 2003

Before: BATCHELDER and COLE, Circuit Judges;
GRAHAM, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** William E. Hosler III, WILLIAMS, WILLIAMS, RUBY & PLUNKETT, Birmingham, Michigan, for Appellant. James G. Gross, GROSS, NEMETH & SILVERMAN, Detroit, Michigan, for Appellee. **ON BRIEF:** William E. Hosler III, WILLIAMS, WILLIAMS, RUBY & PLUNKETT, Birmingham, Michigan, for Appellant. James G. Gross, GROSS, NEMETH & SILVERMAN, Detroit, Michigan, Steven B. Galbraith, GALBRAITH & BOOMS, Southfield, Michigan, for Appellee.

———————————

## OPINION

———————————

GRAHAM, District Judge.

This is a diversity action for declaratory judgment brought by an insurer, Northland Insurance Company ("Northland"), against its insured, Cailu Insurance Corporation ("Cailu"); Donald G. Sare, Jr., Kelly L. Sare and Tyrone Johnson, who are individuals associated with Cailu; and Stewart Title Guarantee Company ("Stewart").

Cailu is a Michigan corporation. Donald Sare, Jr. is president of Cailu, and he and his wife, Kelly Sare, are joint owners of Cailu. Tyrone Johnson is a former employee of Cailu.

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

In 1997, Northland issued a claims-made Title Agent, Abstracter and Escrow Agent Errors and Omissions Liability Policy No. CG002017 ("the policy") to Cailu. The coverage under the policy also extended to the executive officers and employees of Cailu.

According to the terms of the policy, Northland agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of a negligent act, error or omission in the rendering of or failure to render professional services as a title agent, abstracter, escrow agent and notary public[.]" However, the policy contained specific exclusions to the provided coverage, including:

Contractual Liability
Any damages for liability of others which the insured has assumed under any oral or written contract or agreement, except that this exclusion does not apply to liability for damages that the insured would have had in the absence of the contract or agreement.

\* \* \*

Criminal Acts
Any damages arising out of any dishonest, fraudulent, criminal or malicious act or omission by or on behalf of or at the direction of any insured.

This exclusion does not apply to any insured who acted without knowledge of the dishonest, fraudulent, criminal or malicious nature of the act or omission, or who did not personally commit, personally participate in, personally acquiesce to, or who remained passive after having knowledge of such act or omission.

\* \* \*

Non-Monetary Damages
Any damages arising out of any 'claims' seeking relief or redress in any form other than money damages

Non-Compensatory Damages
Any punitive and exemplary damages, fines, penalties or multiplied damages.

\* \* \*

Illegal Profit
Any damages arising out of any gain, profit, or advantage to which the insured is not legally entitled.

\* \* \*

Handling of Funds
Any damages arising out of the commingling, conversion, misappropriation or defalcation of funds or other property.

Stewart is a national title insurance underwriter headquartered in Texas. On or about October 19, 1998, Stewart entered into a title insurance underwriting agreement with Cailu, whereby Cailu became an agent of Stewart.

Subsequently, Stewart became aware of problems with Cailu's mortgage payoffs. On two occasions, Chase Manhattan Mortgage Corporation received checks that were returned for insufficient funds. Although this problem was corrected, Stewart continued to investigate and determined that Cailu's escrow account was short approximately $300,000. Subsequently, other Cailu checks were returned for insufficient funds.

Stewart filed suit against Cailu, the Sares, and Johnson in the Circuit Court of Eaton County, Michigan, alleging breach of the title insurance underwriting agreement, breach of statutory fiduciary duty and the Michigan Insurance Code, embezzlement and defalcation, conversion, and commingling of funds. *See Stewart Title Guaranty Co. v. Cailu Title Corp.*, No. 99-954 (Eaton County Circuit Court). Northland initially agreed to provide the insureds with a defense, subject to a full

reservation of rights. Then, in April, 2000, Northland filed the instant declaratory action in the United States District Court for the Western District of Michigan seeking to determine its obligations under its policy with Cailu. Two months after this action was filed in district court, Stewart filed an amended complaint in the state court action. The amended complaint repeated the allegations asserted in the original complaint and added a claim of negligence.

Cailu and the Sares did not file an answer to Northland's complaint, and an entry of default was filed on June 12, 2000. On September 14, 2000, Northland moved for summary judgment on its complaint for declaratory judgment. On November 6, 2000, Johnson was dismissed as a party without prejudice by stipulation. Stewart opposed Northland's motion for summary judgment. On November 8, 2000, Stewart filed a motion to dismiss or in the alternative to stay the case. On February 2, 2001, the district court granted Northland's motion for summary judgment and denied Stewart's motion. On February 16, 2001, the district court entered a declaratory judgment in favor of Northland, holding that the policy issued to Cailu did not provide coverage for the conduct of the insureds, and that Northland had no duty to defend the insureds in the state court action or to indemnify the insureds for any judgment or settlement against them in that action. On March 1, 2001, Stewart filed a motion for reconsideration of the order granting summary judgment to Northland, and the district court denied the motion for reconsideration on April 25, 2001. Stewart timely perfected an appeal to this court.

## I.  Discussion

### A.  *Incorporation by Reference*

In its Final Brief, Stewart presents us with three issues for review, but it actually briefs only the third issue. For its first issue, Stewart purports to incorporate by reference a motion for reconsideration filed with the district court and found in

the joint appendix; for its second issue, Stewart would incorporate *three* different documents it filed with the district court.

Stewart, in other words, invites us to unearth its arguments lodged here and there in the joint appendix, leaving it to us to skip over repetitive material, to recognize and disregard any arguments that are now irrelevant, and to harmonize the arguments in the various documents. Stewart also attempts by this incorporation maneuver to add forty-two pages to the twenty-six page brief it filed with this Court. For the reasons we shall explain, we hold that Stewart has failed to brief its first two issues, and therefore it has waived its argument on these issues. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]t is a 'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

The incorporation by reference of arguments made at various stages of the proceeding in the district court does not comply with the Federal Rules of Appellate Procedure. *See* FED. R. APP. P. 28(a)(9) (instructing that a component of the brief is "the argument, which must *contain* . . . [the] appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]") (emphasis added); 6th Cir. R. 30(a) ("The purpose of the appendix is to assist the judges in reviewing the briefs and in preparing for oral argument by providing to them those parts of the record necessary for effective understanding of the issues *raised in the briefs*.") (emphasis added); 6th CIR. R. 30(f)(1)(E) ("Except where they have independent relevance, memoranda of law filed in the proceedings below shall not be included in the joint appendix."). This practice has been disallowed by this circuit, albeit in an unpublished opinion, *see Snyder v. United States*, No. 01-1258, 23 Fed. Appx. 212, 213, 2001 WL 1298954, at *1 (6th Cir. Aug. 7, 2001) ("Snyder's attempt to merely

incorporate his district court claims by reference does not serve as an appellate argument."), and by the vast majority of the other circuits, *see Desilva v. DiLeonardi*, 181 F.3d 865, 866-67 (7th Cir. 1999) ("Petitioners direct us to a document filed in the district court, but we have not read it because adoption by reference amounts to a self-help increase in the length of the appellate brief. Even when a litigant has unused space . . ., incorporation is a pointless imposition on the court's time. A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record.") (citation omitted); *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-24 (10th Cir. 1998); *Toney v. Gammon*, 79 F.3d 693, 696 n.1 (8th Cir. 1996); *Gilday v. Callahan*, 59 F.3d 257, 273 n.23 (1st Cir. 1995); *Cray Commun., Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 n.6 (4th Cir. 1994); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993); *Phillip v. Mayo Clinic Ariz.*, No. 01-16062, 33 Fed. Appx. 287, 289, 2002 WL 464582, at *2 (9th Cir. Mar. 21, 2002); *see also* 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3974.5, at 532-33 (3d ed. 1999) (noting that where there are multiple appellants or appellees, a party may incorporate another's brief by reference, but this does not "allow adoption by reference of the briefs filed in the district court, a practice that has been strongly and rightly condemned.") (footnotes omitted).

Of particular concern in this case are the word and line limitations found in Fed. R. App. P. 32(a)(7), which limit the principal brief to 30 pages, 14,000 words, or 1,300 lines of text. *See also* 6th CIR. R. 28(b) (establishing that certain documents that must be included in the brief are not to be included in the calculation of page limitations, but including no omission for arguments that are incorporated by reference). Stewart, at the end of its Final Brief, certifies that "the foregoing Brief complies with Fed. R. App. P. 32(a)(7)(A) and is under the 30 page limitation," and assures us that "[t]he Actual word count is 5802." Both of these assertions are incorrect: the page count clearly omits the incorporated

documents, since the brief along with the incorporation is 68 pages long, and a word count of 5802 is reasonable for a 26-page brief (roughly 223 words per page), but not for one that is 68 pages. Indeed, if one assumes that the 223-word average is maintained through the incorporated documents, Stewart's word count is 15,164--well above the permitted number.

For all of the foregoing reasons, we join the many circuits that have explicitly disallowed the incorporation by reference into appellate briefs of documents and pleadings filed in the district court. Further, we have no hesitancy in applying our holding in the case before us. The Federal Rules of Appellate Procedure, the commentaries, and the published law of other circuits are sufficiently clear to put Stewart on notice that it could not properly incorporate into its appellate brief the materials filed in the district court.

## B.   Motion for Reconsideration

### 1.   Exercise of Jurisdiction under Declaratory Judgment Act

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The district court's exercise of discretion under this Act is reviewed for abuse of discretion. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000). In assessing the district court's discretion, this court generally considers five factors:

(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on

state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Id.* at 968.

The district court addressed these five factors in its opinion. After considering these factors, the district court determined that a declaratory judgment in this case "would serve a useful purpose in clarifying and settling the legal relations in issue to the extent that they arise from Northland's policy." The court noted that Northland was not a party to the state action and would not be bound by that court's determination, and that Northland should not be forced to wait for an answer until after the state action was completed.

In this case, all five of the factors weigh in favor of exercising jurisdiction. Considering the first and second factors, while the declaratory judgment would not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds. "[A] prompt declaration of policy coverage would surely 'serve a useful purpose in clarifying the legal relations at issue.'" *Scottsdale*, 211 F.3d at 968. Further, a declaratory remedy is not being used here merely for "procedural fencing" or to help win a "race for res judicata." *Id.* As the district court noted, the "[c]ircumstances suggest that Northland filed this action only after it became apparent that its insureds had no colorable claim to coverage or a defense." If Northland in fact had no duty to indemnify its insured or to defend them in the state action, then it should not be forced to participate in that action. Because Northland was not a party in the state court proceedings, it would not have been bound by the state court's determination.

In determining whether the exercise of declaratory judgment jurisdiction would increase the friction between the federal and state courts, the fourth factor articulated in

*Scottsdale*, three factors are considered: 1) whether the underlying factual issues are important to an informed resolution of the case; 2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and 3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action. *Scottsdale Ins. Co. v. Roumph*, 18 F. Supp. 2d 730, 735 n.5 (E.D. Mich. 1998), *aff'd*, 211 F.3d 964, 968 (6th Cir. 2000).

Northland was not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend was before the state court. Thus, a decision by the district court on these issues would not offend principles of comity. The district court was fully capable of determining the nature of the coverage provided by the contract of insurance, and this determination did not have to await the resolution of factual issues in the state action. The resolution of the declaratory judgment action is not governed by federal common or statutory law, but rather by state contract law. However, no state law or policy would be frustrated by the district court's exercise of jurisdiction, which would require the application of Michigan law. The district court's exercise of jurisdiction would not create friction between the state and federal courts.

In regard to *Scottsdale*'s fifth factor, Stewart argues that Northland could have intervened in the state court action. However, intervening in the state court action would not necessarily have provided a better or more effective alternative remedy. Northland chose for reasons of its own to have its dispute settled in federal court rather than state court.

The district court properly considered the relevant factors in deciding to exercise its jurisdiction to issue a declaratory judgment. We cannot say that the district court did not employ "the sound exercise of its discretion" under these

circumstances. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

### 2. The Policy

Generally, we review the denial of a motion to reconsider for an abuse of discretion. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 832 (6th Cir. 1999). However, when a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, we conduct a de novo review using the same legal standard employed by the district court. *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999); *Columbia Gas Transmission, Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir. 1991).

The district court's review of the insurance contract at issue is governed by the Michigan law of contract interpretation. Where a contract's meaning is ambiguous, a jury should determine its meaning. *D'Avanzo v. Wise & Marsac, P.C.*, 223 Mich. App. 314, 319, 565 N.W.2d 915, 917 (1997). However, "[w]here the language of a writing is not ambiguous, its construction is a question of law for the court and it is error to submit the matter to the jury." *S.C. Gray, Inc. v. Ford Motor Co.*, 92 Mich. App. 789, 816, 286 N.W.2d 34, 45 (1979). A contract is considered ambiguous if the words "may reasonably be understood in different ways." *Raska v. Farm Bureau Mut. Ins. Co. of Mich.*, 412 Mich. 355, 362, 314 N.W.2d 440, 441 (1982). "'As a general rule, where terms having a definite legal meaning are used in a written contract, the parties to the contract are presumed to have intended such terms to have their proper legal meaning, absent a contrary intention appearing in the instrument.'" *Conagra, Inc. v. Farmers State Bank*, 237 Mich. App. 109, 132, 602 N.W.2d 390, 401 (1999) (quoting *Nationwide Mut. Fire Ins. Co. v. Detroit Edison Co.*, 95 Mich. App. 62, 64, 289 N.W.2d 879 (1980)).

If a fair reading of the entire contract of insurance leads one to understand that there is coverage under

particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances[,] the contract is ambiguous and should be construed against its drafter and in favor of coverage.

Yet if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.

*Raska*, 412 Mich. at 362, 314 N.W.2d at 441.

Northland argued below that the acts of the insureds were not covered by the policy, and therefore it had no duty to defend the action in state court. The insurer generally has a duty to defend its insured. *Bd. of County Rd. Comm'rs of Oakland v. Mich. Prop. Cas. Guar. Ass'n*, 456 Mich. 590, 601 n.6, 575 N.W.2d 751, 756 n.6 (1998). Even if there are theories of liability not covered by the policy, the duty to defend includes the entire action "'if there are any theories of recovery that fall within the policy.'" *Allstate Ins. Co. v. Demps*, 133 Mich. App. 168, 177-78, 348 N.W.2d 720, 724 (1984) (quoting *A & G Assocs., Inc. v. Mich. Mut. Ins. Co.*, 110 Mich. App. 293, 299, 312 N.W.2d 235, 238 (1981)).

This "duty arises from the policy language." *Bd. of County Rd. Comm'rs of Oakland*, 456 Mich. at 601 n.6, 575 N.W.2d at 756 n. 6. When "an insurer has specifically and explicitly excluded coverage with unambiguous policy language, the express exclusions will free the insurer from any duty to defend." *Am. Cas. Co. of Reading, PA v. Rahan*, 854 F. Supp. 492, 504 (W.D. Mich. 1994) (quoting *Upjohn Co. v. Aetna Cas. & Sur. Co.*, 768 F. Supp. 1186, 1196 (W.D. Mich. 1990)); *see Tobin v. Aetna Cas. & Surety Co.*, 174 Mich. App. 516, 519, 436 N.W.2d 402, 403 (1989). Under Michigan law, exclusion clauses and ambiguous provisions in insurance policies are strictly construed against the insurer. *Oscar W. Larson Co. v. United Capitol Ins. Co.*, 64 F.3d 1010, 1012

(6th Cir. 1995) (citing *Farm Bureau Mut. Ins. Co. v. Stark*, 437 Mich. 175, 180, 468 N.W.2d 498, 501 (1991)).

Regardless of the language in the contract, "[t]here is no duty to defend or provide coverage where a complaint is merely an attempt to trigger insurance coverage by characterizing allegations of tortious conduct as 'negligent' activity." *Tobin*, 174 Mich. App. at 518, 436 N.W.2d at 403 (citing *Aetna Cas. & Sur. Co. v. Sprague*, 163 Mich. App. 650, 654, 415 N.W.2d 230, 231 (1987)).

The substantive claims alleged in Stewart's original complaint filed in the Eaton County Circuit Court include breach of the title insurance underwriting agreement; breach of statutory fiduciary duty and the Michigan Insurance Code; embezzlement and defalcation; and conversion and commingling. Although the original complaint included allegations of negligence,[1] it did not include a separate claim based on negligence.

After Northland filed its declaratory action in the district court, Stewart amended its original complaint in the state court action to add a separate claim of negligence in an attempt to trigger insurance coverage. Stewart contends that it added the negligence claim because, "since the filing of this action and the ensuing discovery activity, Mr. Sare has retracted his statement that fraud occurred." Amended Complaint, ¶ 26.

While apparently unwilling to concede this point, Stewart does not zealously argue that the acts of the insureds alleged in the original state court complaint, to the extent that those acts constitute intentional conduct, are within the scope of the

[1] Stewart alleged in paragraph 30 of the complaint that it was entitled to recover for any losses incurred "as a result of the defendant's intentional and/or negligent conduct." Stewart alleged in paragraph 38 of the complaint that the defendants "have negligently misappropriated the escrow monies due[.]"

insurance policy. However, Stewart does argue that a jury could find that the alleged conduct of the insureds was merely negligent, and that such negligent conduct would be within the scope of the policy.[2] Stewart further argues that the district court should have stayed any action on the declaratory judgment complaint pending a jury finding in the state court action as to whether the alleged tortious activity, and breach of contract and breach of fiduciary duty did in fact occur, and if so, whether such conduct was intentional or negligent.

The district court below held that any damages sustained as a result of the breach of contract, conversion, commingling, defalcation, embezzlement, or breach of fiduciary duty fell within the exclusions of the policy regardless of whether the conduct was negligent or intentional. We agree with this finding.

"[I]n general, exclusionary clauses are construed against the insurer." *Pac. Employers Ins. Co. v. Mich. Mut. Ins. Co.*, 452 Mich. 218, 224, 549 N.W.2d 872, 875 (1996) (citing *Bianchi v. Auto. Club of Mich.*, 437 Mich. 65, 70, 467 N.W.2d 17 (1991). "But, '[t]his Court cannot create ambiguity where none exists. . . . Clear and specific exclusions must be given effect.'" *Id.* (quoting *Auto-Owners Ins. Co. v. Churchman*,

[2] Stewart asserts that the first amended complaint in the state court action "include[d] some allegations that arguably fall outside the scope of the errors and omissions insurance policy. However, the First Amended Complaint also contains negligence allegations, which clearly fall within the scope of the errors and omissions policy." *See* Stewart's Answer in Opposition to Plaintiff's Motion for Summary Judgment. Stewart further argued in response to Northland's motion for summary judgment that

[a]lthough the First Amended Complaint alleges that the failed disbursements after various closings were in breach of fiduciary duty, defalcation or conversion, Count VIII also asserts that Defendant was negligent in performing its services as a title insurance agent and in handling escrow transactions and in maintaining its escrow account. . . . Arguably, th[e] allegations [in the negligence count] fall within the coverage of Northland's policy, thus raising a duty to defend its insureds.

440 Mich. 560, 567, 489 N.W.2d 431, 434 (1992)**;** *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 666, 443 N.W.2d 734, 739 (1989)). In addition, "an insurance contract should be read as a whole to effectuate the overall intent of the parties." *Id.* at 224, 549 N.W.2d at 875.

The policy at issue here provides "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of a negligent act, error or omission in the rendering of or failure to render professional services as a title agent, abstracter, escrow agent and notary public." The policy explicitly excludes from its coverage non-monetary and non-compensatory damages as well as damages resulting from certain specific kinds of conduct: breach of contract, any dishonest, fraudulent, criminal or malicious act, any damages arising out of any gain, profit or advantage to which the insured is not legally entitled, and any damages arising out of the commingling, conversion, misappropriation, or defalcation of funds.

The policy contains no language limiting these exclusions to intentional acts; rather, the exclusions are for damage resulting from specific kinds of conduct without regard to whether that conduct was intentional or negligent. Because the policy covers only liability for negligent conduct, and because the policy excludes from its coverage damage resulting from specific conduct without regard to whether it was intentional or negligent, the district court properly held that the policy exclusions encompassed the specified conduct even if that conduct was negligent.

Northland claims that it has no duty to defend because the allegations in the underlying complaint allege only conduct by the insureds which is excluded under the policy. Michigan law provides that an insurer's duty to defend "depends upon the allegations in the complaint" against the insured, and that a defense must be provided if those allegations *"even arguably* come within the policy coverage." *Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 102 Mich. App. 136, 142**,** 301

N.W.2d 832, 835 (1980) (emphasis in original). The duty to defend is not limited by the precise language in the underlying complaint. Insurers also have a duty to "look behind" a complaint's allegations to analyze whether coverage is possible, and, where doubt exists, to resolve that doubt in the insured's favor. *Id.***;** *see Ziebart Int'l Corp. v. CNA Ins. Co.*, 78 F.3d 245, 248 (6th Cir. 1996)*; see also Dochod v. Cent. Mut. Ins. Co.,* 81 Mich. App. 63, 264 N.W.2d 122 (1978). That is, the insurer has a clear duty to defend the state court action suit until all possible theories of recovery which could be covered by the policy are eliminated. *N. Bank v. Cincinnati Ins. Cos.*, 125 F.3d 983, 986 (6th Cir. 1997) (citing *Detroit Edison Co.*, 102 Mich. App. at 142, 301 N.W.2d at 835). The insurer's duty to defend depends upon the potential shown in the complaint that the facts ultimately proved fall within the coverage. *Jonesville Prods., Inc. v. Transamerica Ins. Group*, 156 Mich. App. 508, 513, 402 N.W.2d 46, 48 (1986); *Reurink Bros. Star Silo, Inc. v. Md. Cas. Co.*, 131 Mich. App. 139, 143, 345 N.W.2d 659, 661 (1983). Finally, an insurer is obliged to defend "until the claims against the policyholder are confined to those theories outside the scope of coverage under the policy." *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.,* 452 Mich. 440, 455, 550 N.W.2d 475, 483 (1996). Doubt as to whether the policy is applicable must be resolved in the insured's favor. *Meridian Mut. Ins. Co. v. Hunt*, 168 Mich. App. 672, 677, 425 N.W.2d 111, 114 (1988).

The district court properly determined that the damages alleged in the state court complaint resulted from conduct that was excluded by the contract. Stewart alleged in the state court action that the defendants breached the title insurance underwriting agreement. In that agreement, Cailu agreed to hold escrow monies in trust for customers of Stewart. Stewart alleges that "the defendants . . . failed and refused to pay to the customers of Stewart Guaranty the escrow monies pursuant to closing instructions." Amended Complaint, ¶ 37. This conduct is expressly excluded by the contractual liability exclusion in the policy.

In regard to the embezzlement claim, while embezzlement is not expressly excluded from insurance coverage, embezzlement under Michigan law requires an intentional act. *See Michigan v. Lueth*, 253 Mich. App. 670, ___ N.W.2d ___ (2002) (The elements of embezzlement under Michigan law include an intent to defraud or cheat). As previously stated, the policy only covers negligent conduct of the insureds. Accordingly, embezzlement, by definition, requires intentional conduct that is excluded from insurance coverage.

Conversion is "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Head v. Phillips Camper Sales* & Rental, 234 Mich. App. 94, 111, 593 N.W.2d 595, 603 (1999) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600, 606 (1992)). In Stewart's amended complaint, it alleged that the defendants "converted and/or commingled the monies to their own use and benefit, contrary to the interests of the plaintiff and its insured[.]" Even if true, claims for defalcation, conversion, and commingling are excluded by the "Handling of Funds" exclusion. Consequently, regardless of whether a jury concluded that commingling, conversion or defalcation occurred, they are expressly excluded by the policy.

Embezzlement, conversion and other improper handling of funds can constitute criminal conduct. Stewart argues that if the insureds' acts fell within the exception to the criminal exclusion, that is, if the insureds acted without knowledge of the dishonest, fraudulent, criminal or malicious nature of the act or omission, damages from those acts would fall within the scope of the policy. However, even if the insureds acted without knowledge of the dishonest, fraudulent, criminal or malicious nature of the act or omission, the damages, regardless of mens rea, would still be excluded from coverage if those damages resulted from one of the other listed exclusions. *See Pac. Employers Ins. Co.*, 452 Mich. at 224, 549 N.W.2d at 875 (citations omitted). Here, even if the insureds acted with no criminal intent, but the conduct at

issue constituted commingling, conversion, misappropriation or defalcation of funds, coverage would be barred by the "Handling of Funds" exclusion.

Stewart's request for treble damages in connection with the claims for embezzlement and defalcation, conversion and commingling is barred by the policy's exclusion of non-compensatory damages.

The only remaining claim is the breach of statutory fiduciary duty and the Michigan Insurance Code. In paragraphs 42 through 45 of the first amended complaint filed in state court, Stewart alleged that:

> The defendants have a fiduciary duty to plaintiffs to receive, deposit, and remit escrow closing monies obtained from the closing of the transactions and followed by the issuance of title policies pursuant to terms of the parties underwriting [a]greement.
> The defendants['] fiduciary duty was created not only by the express terms of the parties underwriting [a]greement, but also was a duty imposed by statute.
> Under the Michigan insurance code ... an agent shall be a fiduciary for all money received or held by the agent. Failure by an agent to turn over the money held as a fiduciary is *prima facie* evidence of violation of the agent's fiduciary responsibility....
> Sare and/or Cailu Title are agents of the plaintiffs, and have failed and refused, despite requests, to make payments to the various customers of plaintiff who closed transactions with the defendants.

It is clear from these allegations that the claim for breach of statutory fiduciary duty and the Michigan Insurance Code is based on the other tortious conduct alleged in the state court complaint. Because that tortious conduct involves the commingling, conversion, misappropriation, or defalcation of funds, these claims are also excluded by the "Handling of Funds" exclusion.

Thus, the facial allegations in the state court complaint allege conduct which clearly falls within the exclusions in the policy. Looking behind those allegations, the record on summary judgment discloses no theories of recovery or set of facts which would allow Stewart to prove its claims by means of conduct which would not fall within one of the policy's exclusions.

Stewart argues that it should have been left to the jury in the state case to decide whether the acts of the insured did in fact constitute contract liability, conversion, commingling, or embezzlement/defalcation so as to qualify as excluded conduct under the policy. In light of the fact that the district court properly concluded as a matter of law that the insurance contract excluded coverage for damages arising from the type of conduct, both intentional and negligent, alleged in Stewart's state court complaint, it is irrelevant whether a jury in the state court case would have found that the alleged conduct occurred, or whether it was intentional or negligent. It was Stewart's burden to show, in response to Northland's motion for summary judgment, that it could prove its claims by means of evidence of conduct which would not fall within the exclusions. This Stewart failed to do. The district court properly determined, based on the face of the complaint and the record on summary judgment, that the alleged conduct would fall within the exclusions to coverage under the policy. Thus, the district court did not err in declining to stay the declaratory judgment action pending a resolution of the state case.

The district court properly granted summary judgment because Stewart failed to assert any theories of recovery that fall within the policy. Thus, regardless of whether the conduct was negligent or intentional, Northland has no duty to defend.

## II. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.