MAY, J.
 

 A dispute between a title insurer (Chicago Title) and its errors and omissions carrier (Northland) over the interpretation of a policy and its exclusions create the issue in this appeal. Chicago Title appeals an adverse summary judgment and argues that Northland waived its right to raise the policy exclusions as a defense to a garnishment action when it wrongly refused to defend its insured First Southern Title Company in an underlying action. We disagree and affirm.
 

 The underlying litigation arose from an attorney’s misappropriation of monies in a real estate transaction for which First Southern was the title agent. First Southern’s employee released a check to the attorney to hold in escrow for satisfaction of a mortgage. The attorney misappropriated the funds, leaving insufficient money to satisfy the mortgage. Chicago Title made payment under its policy to clear the title.
 

 Chicago Title then filed suit against First Southern, its principal, and the attorney, seeking to recover the funds. The complaint alleged a significant shortage in escrow funds as a result of “negligence, misapplication, conversion and/or theft of funds.” The complaint alleged counts for negligence and negligent supervision against First Southern and its principal, and for fraud and deceit against the attorney and First Southern’s principal.
 

 First Southern and its principal tendered their defense to Northland, but Northland denied the tender and coverage based on the “Handling of Funds” exclusion and the “Additional Exclusion Endorsement” of its policy.
 
 [1]
 

 Chicago Title, First Southern, and its principal entered into a settlement agreement, which the court approved in a final judgment. The court entered the consent judgment in favor of Chicago Title and against First Southern and its principal on the negligence, breach of fiduciary duty, and negligent supervision counts. The court also entered judgment against First Southern on the breach of contract count,
 
 *216
 
 and against First Southern’s principal on the breach of guarantee count. All other counts were dismissed with prejudice.
 

 Chicago Title was unable to collect on the judgment from First Southern or its principal, causing it to file a Motion for Issuance of Writ of Garnishment against Northland. The trial court issued the writ; Northland answered by denying liability. The trial court ultimately entered a final judgment in favor of Northland, from which Chicago Title now appeals.
 

 We have
 
 de novo
 
 review of a summary judgment.
 
 Howard v. Boulanger Drywall Corp.,
 
 23 So.3d 817, 819 (Fla. 4th DCA 2009). The parties agree there are no genuine issues of material fact. We are left with the legal issue of whether North-land was entitled to judgment as a matter of law.
 
 Selepro, Inc. v. Church,
 
 17 So.3d 1267, 1269 (Fla. 4th DCA 2009).
 

 Chicago Title first argues that Northland waived its right to deny coverage when it wrongfully refused to defend First Southern and its principal in the underlying litigation and is now bound by the terms of the final judgnent. The trial court disagreed with this argument and so do we. In a subsequent action by the insured against its insurer, Florida courts look to the complaint and the insurance policy to determine whether there is coverage.
 
 See Keen v.
 
 Fla.
 
 Sheriffs’ Self-Ins. Fund,
 
 962 So.2d 1021, 1024 (Fla. 4th DCA 2007). This is true notwithstanding an insurer’s refusal to defend leading to the insured entering into a consent judgment.
 
 See, e.g., Kopelowitz v. Home Ins. Co.,
 
 977 F.Supp. 1179, 1187 n. 3 (S.D.Fla.1997) (citing
 
 Columbia Cas. Co. v. Hare,
 
 116 Fla. 29, 156 So. 370 (1934) and
 
 Spencer v. Assurance Co.,
 
 39 F.3d 1146, 1148 (11th Cir.1994)).
 

 Chicago Title next argues that Northland was contractually obligated to provide coverage to First Southern because the complaint alleged counts for negligence and negligent supervision, regardless of the ultimate cause of loss — the misappropriation of funds. We agree with the trial court that semantics cannot avoid the obvious. Where the application of one or more policy exclusions applies to the face of the complaint, no duty to defend exists, even if the complaint alleges facts that would otherwise give rise to a covered claim.
 
 See Keen,
 
 962 So.2d at 1024. Here, the damages resulted from the misappropriation of funds, which is clearly excluded from coverage under the policy.
 

 The complaint alleged that the shortage in escrow funds was “the result of negligence, misapplication, conversion and/or theft of funds.” The Handling of Funds exclusion excluded “damages arising out of the comingling, conversion, misappropriation or defalcation of funds or other property.” And, the Additional Exclusion Endorsement excluded claims connected in any way to the dishonoring of any financial instrument.
 

 As the trial court found, “both the Handling of Funds exclusion and the Additional Exclusion Endorsement apply, because they are addressed to the undisputed facts that are incorporated into the Consent Judgment.” Any liability based on negligence stems from and is dependent on the misappropriation of funds by the attorney. But for the attorney’s actions, Chicago Title would have had no obligation to pay damages. It is also undisputed that the financial instrument issued by First Southern was dishonored and prevented it from satisfying the mortgage. Chicago Title’s claim clearly “arises out of’ actions for which the exclusion precludes cover
 
 *217
 
 age.
 
 [2]
 

 A similar result was reached in
 
 Northland Ins. Co. v. Stewart Title Guaranty Co.,
 
 327 F.3d 448 (6th Cir.2003). There, the insurer issued a policy to a title insurance agency with the same exclusion.
 
 Id.
 
 at 450. After checks written by the insured were returned for insufficient funds, an escrow account audit revealed a shortage of approximately $300,000.
 
 Id.
 
 at 451. The insured’s underwriter filed suit against the insured, alleging embezzlement, defalcation, conversion, and commingling of funds.
 
 Id.
 
 The insurer agreed to provide a defense, subject to a full reservation of rights.
 
 Id.
 
 It then filed a declaratory action to determine its obligations under the policy.
 
 Id.
 
 The Sixth Circuit agreed with the district court’s finding “that any damages sustained as a result of the ... conversion, commingling, defalcation, [or] embezzlement, ... fell within the exclusions of the policy regardless of whether the conduct was negligent or intentional.”
 
 Id.
 
 at 456.
 

 For the same reason, we affirm.
 

 Affirmed.
 

 GROSS, C.J., and CIKLIN, J„ concur.
 

 [1]
 

 . The policy provided that “[Northland] will pay those sums that [First Southern] becomes legally obligated to pay as damages because of a negligent act, error or omission in the rendering or failure to render professional services....” Further, "[Northland has] the right and duty to defend any ‘suit’ seeking damages to which this insurance applies” however, Northland has "no duty to defend [First Southern] against any suit seeking damages for which the insurance does not apply.”
 

 The Handling of Funds exclusion excludes coverage for "[a]ny damages arising out of the comingling, conversion, misappropriation or defalcation of funds or other property.” The Additional Exclusion Endorsement amended the policy to exclude "[a]ny claim arising out of, in connection with, or in consequence of, directly or indirectly, any person or entity's, financial inability to pay, insolvency, receivership, bankruptcy, liquidation or the dishonoring of any financial instrument.”
 

 [2]
 

 . The fact that the attorney, and not First Southern, committed the misappropriation is of no significance. Unlike the policy's “Criminal Acts” exclusion, which excludes "damages arising out of any dishonest, fraudulent, criminal or malicious act or omission, by or on behalf of or at the direction of any insured,” the Handling of Funds exclusion does not rely on the identity of the actor.