799 F.2d 247
 STATE FARM FIRE AND CASUALTY COMPANY, a foreign corporation,
Plaintiff-Appellee,
v.
Darryl ODOM (85-1358); Cheryl Odom, Individually and as
Personal Representative of the Estate of Erica
Hood, Deceased (85-1359), Defendants-Appellants.
 Nos. 85-1358, 85-1359.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 25, 1986.
Decided Aug. 25, 1986.
 
 Michael A. Gagleard (argued) Gagleard, Addis, Imbrunone & Gagleard, P.C., Troy, Mich., Joseph P. Ciaramitaro, Jr., Mt. Clemens, Mich., for defendants-appellants.
 John A. Ashton, Plymouth, Mich., for plaintiff-appellee.
 Before MERRITT and JONES, Circuit Judges, and THOMAS, Senior District Court Judge*.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 In this insurance coverage dispute brought under diversity jurisdiction, defendants appeal the summary judgment entered in favor of the plaintiff insurer, State Farm Fire and Casualty Company (State Farm). State Farm provides homeowners insurance to defendant-appellant Darryl Odom who is the defendant in a tort action pending in Michigan state court. In this action State Farm sought and received a declaration that it has no duty to defend Darryl Odom because its policy does not cover the liability alleged in the state action. We affirm.
 
 
 2
 Darryl Odom bought a house in Detroit in 1981 and moved into it along with defendant-appellant Cheryl Hood Odom, Cheryl's infant daughter Erica Hood, and Cheryl's mother Hazel Hood. Darryl and Cheryl were not married at the time; he had asked her to marry him and the living situation was apparently a trial arrangement. The two married in February, 1982, four months after they moved in. Erica was not Darryl Odom's daughter and he had no legal responsibility for her. Darryl and Cheryl pooled living expenses for the four and had a joint checking account. Although Cheryl and Hazel Hood were the primary caretakers of the child, Cheryl worked evenings and Hazel days. Therefore, Darryl took care of the child daily from about 2-5 p.m.
 
 
 3
 On January 6, 1982, Darryl was draining the furnace boiler in the home and the water from the boiler had drained onto the floor of the basement. Erica, who was alone with Darryl, slipped and fell into a bucket of scalding water. She suffered second degree burns and died of her injuries.
 
 
 4
 Cheryl brought a wrongful death action against Darryl in Michigan court. State Farm refused Darryl's request to defend and brought this action seeking a declaration of no coverage, naming both Darryl and Cheryl as defendants. The homeowner's policy excludes liability coverage for injuries suffered by an insured. State Farm alleged that Erica was an "insured" under the policy and therefore Darryl's alleged liability for her injuries is not covered. An insured is defined in the policy as:
 
 
 5
 you and the following residents of your household:
 
 
 6
 a. your relatives;
 
 
 7
 b. any other person under the age of 21 who is in the care of any person named above.
 
 
 8
 App. at 30 (emphasis added). State Farm alleged that Erica was a "resident" "in the care of" Darryl Odom and therefore was an "insured." The Odoms argued that both the term "resident" and the phrase "in care of" are ambiguous, especially the latter which they assert can be read to mean only legal care such as a guardianship. These ambiguities, they said, should be construed in their favor and against State Farm.
 
 
 9
 The case was submitted on cross-motions for summary judgment. The court delivered an oral opinion in which it related the arguments of both sides and ruled that Erica was an "insured." On appeal, the parties focus their arguments on the construction of the two disputed terms, "resident" and "in the care of."
 
 I.
 
 10
 The Odoms do not strongly argue on appeal that the term "resident" is ambiguous; rather, they contend that the court erred in ruling that Erica was a resident because her mother, Cheryl, had only lived in the house 3 months at the time of the injury and had not yet decided to marry Darryl and live there permanently.
 
 
 11
 The district court applied the four-part balancing test for determining whether a person is a resident of a household announced in Workman v. Detroit Automobile Inter-Insurance Exchange, 404 Mich. 477, 274 N.W.2d 373 (1979). The Michigan Supreme Court in that case sought to determine whether an individual was a "domiciliary" of her mother's house or her father-in-law's house for purposes of the Michigan no-fault automobile liability law, but drew the test from cases that dealt with questions of residence for insurance policies such as this. Id. at 495 & n. 4, 274 N.W.2d 373. The test involves the weighing of four factors: 1) subjective or declared intent of the individual to remain indefinitely in the household, 2) formality of the relationship between the individual and the householder, 3) whether they live in the same house or premises, 4) whether the individual has another place of lodging. Id. at 496-97, 274 N.W.2d 373.
 
 
 12
 This test is properly applied in this case, and all four factors point in varying degrees toward a conclusion that Erica was a resident of Darryl's house: 1) her mother, while undecided whether to marry Darryl, had no intent to leave at any specific time; 2) the relationship among the three, while not a legal family, was treated as familial; 3) all parties lived in the same house; 4) there was no other place where Erica and her mother stayed. Therefore, the court properly concluded that Erica was a resident of Darryl's house.
 
 II.
 
 13
 The Odoms claim that the term "in care of", which is not further defined in the policy, is ambiguous. Michigan follows the normal rule that ambiguities in an insurance contract are to be construed strictly against the insurer. See, e.g., Western Casualty and Surety Group v. Coloma Township, 140 Mich.App. 516, 522, 364 N.W.2d 367 (1985). An ambiguity exists when the language "may be reasonably understood in different ways." Ford Motor Credit Corp. v. Aetna Casualty & Surety Co., 717 F.2d 959, 962 (6th Cir.1983) (applying Michigan law).
 
 
 14
 The Odoms argue that the phrase can be reasonably construed to mean only legal care or responsibility. In support of their argument they point to the deposition of the State Farm adjuster who issued the denial letter in this case. That adjuster was asked, "by looking at [the phrase], would an individual know whether it means legal care or physical care?" App. at 191. He answered that "it doesn't answer the type of questions you have and if that's our definition of ambiguous, I would agree with you." Id. If the question before us were only whether the phrase meant legal care or physical care, we would also agree that it is ambiguous. The actual question, however, is whether it includes legal and physical care or only legal care. We hold the phrase cannot be reasonably understood to mean only legal care and therefore it is not ambiguous within the controversy raised in this case.
 
 
 15
 There was no genuine issue of fact whether Darryl Odom provided significant physical care to Erica. The group lived and functioned together as a family, which they soon afterwards became. Between them, Darryl and Cheryl provided housing, clothing and food, and all three adults shared in the child's care.
 
 
 16
 We hold that the district court did not err in ruling that Erica was a "resident" "in the care of" Darryl as those terms are used in the policy. Accordingly, the entry of judgment for State Farm was proper and is AFFIRMED.[1]
 
 
 17
 MERRITT, Circuit Judge, dissenting.
 
 
 18
 I would decline to exercise our discretion to grant declaratory judgment in this case. The case is simply a delaying action brought by the insurance company.
 
 
 19
 The granting of declaratory judgment is a matter of discretion. 28 U.S.C. Sec. 2201. Although that discretion is exercised in the first instance by the trial court, it is reviewable on a de novo basis by the Court of Appeals, so that if we find that declaratory judgment was improvidently granted we "should decline to advise the parties as to the law and refuse to decide the issues presented." Grand Trunk Western R.R. v. Consolidated Rail Corp., 746 F.2d 323, 325-26 (6th Cir.1984). See also Green v. Mansour, --- U.S. ----, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985) (Declaratory judgment is discretionary in nature; decision of whether it should be granted "may depend on equitable considerations," and should be "informed by the teachings and experience concerning the functions and extent of federal judicial power.").
 
 
 20
 Several factors govern the determination of whether a case is suitable for declaratory judgment, among them (1) whether the judgment would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. Grand Trunk, 746 F.2d at 326.
 
 
 21
 In Grand Trunk we dismissed a declaratory judgment action because we saw the case as an effort to play off the state and federal courts against each other and as a race for res judicata: Grand Trunk, the defendant in an Illinois state action, had filed a federal action seeking a declaration that a codefendant was bound to defend and indemnify pursuant to an indemnity agreement. The same considerations apply in this case, where the underlying state action has not been completed. Furthermore, a superior alternative remedy exists in the form of an indemnity action in state court after the trial on liability has been completed. In such an action, the trial court will have the benefit of the record in the liability trial, and (the outcome of that trial being known) the issue of coverage as to costs of defense will be shaped by the actual facts of the liability trial. See Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins., 791 F.2d 460 (6th Cir.1986).
 
 
 22
 As we have repeatedly stated in Grand Trunk and its successor cases, see Manley, Bennett, supra, and American Home Assurance Company v. William S. Evans, et al., 791 F.2d 61 (6th Cir.1986), declaratory judgment actions seeking an advance opinion on indemnity issues are rarely helpful when there is an ongoing action in another court. Except in unusual circumstances, such actions for an advance determination in the nature of an advisory opinion should be filed, if at all, in the court having jurisdiction over the underlying litigation. Such actions seldom resolve the entire dispute among the parties, and they create confusion among courts as to schedules, orderly resolution of factual disputes, and res judicata. Such actions require two courts rather than one to address the same basic issues and tend to increase the legal fees of the parties and the time it takes to resolve the underlying dispute.
 
 
 23
 Here the primary state court action was filed four years ago and is still pending because the insurance company has used this action to delay the main lawsuit. All of the questions in both cases are purely state law issues. No federal interests are present. Our Court's ruling that the child was under Odom's care and control is res judicata on the same liability issue in the state case. The effect of our ruling on the declaratory judgment issue is to preempt the decision of the state court in the case on the merits. I therefore would not give an advisory opinion in this case.
 
 
 
 *
 The Honorable William K. Thomas, Senior District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 We disagree with the dissent's conclusion that the factors identified in Grand Trunk Western R.R. v. Consolidated Rail Corp., 746 F.2d 323, 326 (6th Cir.1984), when applied to this case, compel that we deny relief. 1) Judgment will settle the real and immediate controversy about whether State Farm must defend Darryl Odom in the state court action, a decision that is no doubt important to parties on all sides of this dispute. 2) Judgment will likewise clarify the legal relations at issue. 3) We have no evidence that State Farm has done any more than properly choose the jurisdiction of federal rather than state court, a choice given by Congress. Further the question whether Cheryl Odom will be able to assert in state court that the issue of "care and control" over the child is res judicata against Darryl, when both were on the same side in the federal litigation, is not as clear cut as the dissent asserts. More importantly, the primary issue in the underlying action will undoubtedly be Darryl's negligence, not his relationship to the child. 4) Because there is only a minor overlap of issues between this case and the state court litigation, we do not see a possibility of undue federal court/state court friction. 5) We agree that it might have been more expeditious for State Farm to bring its claim in the state court where the underlying action is pending. Indeed, had the district court declined to hear this case there are strong reasons why that discretionary decision might be affirmed. But undoing a judgment when the controversy has already been heard and adjudged, and, as we hold, correctly, because it would have been more expedient not to have heard the case at all would be a curious and, we think, unjust result