**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0887n.06
Filed: December 8, 2006

**No. 05-6944**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **WEST AMERICAN INS. CO.**, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| *Plaintiff-Appellee,* | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| v. | ) | |
| | ) | **OPINION** |
| **RICHARD H. PREWITT**, | ) | |
| | ) | |
| *Defendant-Appellant.* | ) | |

BEFORE:     KEITH, COLE, Circuit Judges and STEEH, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge.**    West American Insurance Company ("West American") brought an action for declaratory relief against Richard H. Prewitt in the Eastern District of Kentucky.    West American argues that, because of an exclusion provision in Prewitt's homeowner's insurance policy, it has no duty to defend or indemnify Prewitt in a state-tort action based on a sailing accident that occurred while Prewitt was at the helm of a sailboat owned by his friend Dr. Robert Hensley.    The district court exercised jurisdiction over West American's declaratory relief action.    The court determined that the exclusion provision in Prewitt's insurance policy applied and granted summary judgment for West American, concluding that West American had no duty to defend Prewitt in the state action.    For the following reasons, we **AFFIRM** the district

---

[*] The Honorable George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

court's exercise of jurisdiction over the declaratory relief action and the court's grant of summary judgment for West American.

## I. FACTS

On June 10, 2003, Hensley and Prewitt, friends since the 1970s, set sail on Hensley's boat heading south on the Atlantic Ocean toward the Dry Tortugas. On July 1, 2003, at around 1:00 am, the sailboat ran aground on the Carysfort Reef off the coast of Key Largo, Florida. Prior to the accident, on the night of June 30, 2003, Hensley was at the helm for five hours. After completing his shift, Hensley relinquished control of the boat to Prewitt with specific instructions on what course to sail. Prewitt testified that Hensley told him to "sail a course of 200 degrees to 210 degrees and leave the lighthouse [on Carysfort Reef] to starboard." (Joint Appendix "JA" 143.) This was the first time during the trip that Hensley had ever given Prewitt a specific course to sail. After realizing that the course set by Hensley was taking them directly toward the reef, Prewitt adjusted the boat's course to a heading of 200 degrees. The adjustment was not enough and the boat ran aground on the reef. At the time of the accident, the sailboat was uninsured.

In October of 2003, Hensley filed a negligence action against Prewitt in the Circuit Court for Clark County in Kentucky. At the time of the accident, Prewitt had a homeowner's insurance policy with West American which insured him against liability for damage to the property of third parties, subject to certain exclusions. Pursuant to the policy, West American conditionally agreed to defend Prewitt in the negligence action but reserved the right to determine whether Prewitt's policy covered the accident. Exclusion 2(c) in Prewitt's policy states that personal liability coverage does not extend to "property damage to property rented to, occupied or used by or in the care of the insured."

(JA 32.)

West American filed a declaratory judgment action on November 15, 2004, seeking a declaration that Prewitt's homeowner's policy did not cover the damage to Hensley's boat and did not require West American to pay Prewitt's litigation costs in the state-court action. The district court concluded that it was appropriate to exercise jurisdiction over the declaratory judgment action by West American. In reaching its decision, the district court considered the five factors this Court has set forth for assessing the propriety of a federal court's exercise of jurisdiction in suits for declaratory relief:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). The district court also considered the three additional factors expressed by the Supreme Court in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). The factors, which serve to refine the federalism-focused inquiry under the fourth factor of the *Scottsdale* test, are:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action.

*Scottsdale Ins. Co.*, 211 F.3d at 968. Ultimately, the district court concluded that four out of the five factors weighed in favor of exercising jurisdiction.

- 3 -

The district court also granted summary judgment in West American's favor. The court found that there were no disputed issues of material fact and that West American's duty to defend Prewitt in the state action was dependent on whether Hensley's boat was in Prewitt's care, as dictated by the exclusion provision. The court concluded that "[a]t the time of the accident, Hensley's boat was under the supervision of Prewitt, and Prewitt had responsibility for the safety and well-being of the boat." *W. Am. Ins. Co. v. Prewitt*, 401 F. Supp. 2d 781, 786 (E.D. Ky. 2005).

## II.  DISCUSSION

### A.  Standard of Review

#### 1.  Declaratory Relief Action

This Court reviews a district court's decision to exercise jurisdiction under the Declaratory Judgment Act (the "Act"), 28 U.S.C. § 2201(a), for abuse of discretion. *Wilton*, 515 U.S. at 289 (replacing the de novo standard of review with the abuse of discretion standard); *Scottsdale Ins. Co.*, 211 F.3d at 967 (applying the abuse of discretion standard to a district court's exercise of discretion under the Act). A district court abuses its discretion under the Act "when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Southward v. South Cent. Ready Mix Supply Corp.,* 7 F.3d 487, 492 (6th Cir. 1993) (quoting *Black Law Enforcement Officers Ass'n v. Akron*, 824 F.2d 475, 479 (6th Cir. 1987)). This Court has further elaborated that a district court abuses its discretion when the "reviewing court . . . has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached." *McBee v. Bomar*, 296 F.2d 235, 237 (6th Cir. 1961).

#### 2.  Summary Judgment

This Court reviews a district court's grant of summary judgment de novo. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 619 (6th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This burden is satisfied "by demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Id.* "The mere existence of a scintilla of evidence" that supports the non-moving party's claims is insufficient to defeat summary judgment. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

**B.      The District Court Properly Exercised Jurisdiction Over West American's Declaratory Relief Action**

The Act gives district courts discretion over whether to grant declaratory relief in a particular case. *Wilton*, 515 U.S. at 288 (explaining that Congress, through the Act, "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants"); *Public Affairs Press v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command."). The Act states, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). A district court examines five factors in determining whether to exercise jurisdiction over a declaratory relief action.

_____*Factor 1: Whether a declaratory judgment will settle the controversy*

The district court concluded that the first factor weighed in favor of exercising jurisdiction over West American's declaratory relief action. The court found that, in this action, a declaratory judgment would settle the controversy over the scope of insurance coverage. The district court's finding is consistent with this Court's decisions in *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448 (6th Cir. 2003); *Allstate Insurance Co. v. Green*, 825 F.2d 1061 (6th Cir. 1987); and *State Farm and Casaulty Co. v. Odom*, 799 F.2d 247 (6th Cir. 1986)—all cases where this Court found that a declaratory relief action could settle the insurance coverage controversy not being addressed in the underlying state action. Further, this Court noted in *Scottsdale* that "a prompt declaration of policy coverage would surely 'serve a useful purpose in clarifying the legal relations at issue.'" 211 F.3d at 968.

Prewitt argues that this case is similar to *Bituminous Casulty Corp v. J & L Lumber Co.*, 373 F.3d 807 (6th Cir. 2004), a case where this Court concluded that the exercise of jurisdiction over the declaratory relief action was improper. *Bituminous* is distinguishable from the present case. In *Bituminous*, the issue before the district court was the same issue already being considered in two state-court proceedings: whether Phillip Shields (the plaintiff in the state action who was injured while hauling a load of timber from a J & L logging site) was an employee of J & L at the time of the injury and thus not covered by the insurance policy. 373 F.3d at 813. This Court's determination, that exercising jurisdiction was improper, relied heavily on there being a state court already considering the same issue.

Here, West American seeks a declaration that it has no duty to defend Prewitt in the state

action based on exclusion 2(c) of the insurance policy. Hensley's suit against Prewitt in state court, however, is a tort action, focused on whether Prewitt was negligent in the operation of Hensley's sailboat. A determination about the applicability of the exclusion provision, at issue here, turns on whether Hensley's boat was being "used by or in the care of" Prewitt at the time of the accident—a question not before the state court. Therefore, the district court properly concluded that this factor weighed in favor of exercising jurisdiction.

> *Factor 2: Whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue*

The district court concluded that the second factor also weighed in favor of exercising jurisdiction. The second factor refers to clarification of the legal issues in the state case. West American's declaratory action would not clarify those issues because the federal-court action deals only with the scope of insurance coverage, whereas the state-court action is focused on the negligent operation and maintenance of Hensley's boat. Nonetheless, the district court concluded that "[a]nswering the question of whether Prewitt's insurance policy provides coverage . . . will not conflict with the state court's resolution" of the issues before it. (JA 60.)

This Court has held that declaratory relief was a proper remedy in cases where the declaratory action would clarify *only* the legal relationship between the insured and the insurer, and would not clarify the legal relationships in the state action. *See, e.g.*, *Odom*, 799 F.2d at 250 (finding that a declaratory judgment was proper because it would clarify the legal relations at issue by settling "the real and immediate controversy" about whether the insurer must defend the insured in the state action); *Northland Ins. Co.*, 327 F.3d at 454 (explaining that declaratory relief was proper despite

the fact that a declaratory judgment would not end the dispute in the state action but would only settle the dispute over insurance coverage). Further, in *Green*, this Court explained that the "grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnify its insured, thus clarifying the legal relations in issue." 825 F.2d at 1066. Accordingly, the district court did not err in concluding that exercising jurisdiction over the declaratory relief action was proper because it would clarify the scope of Prewitt's insurance coverage.

> *Factor 3: Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata*

The district court concluded that the third factor weighed in favor of exercising jurisdiction. The court explained that "it appears that [West American] merely chose a forum in which to seek a declaration regarding the scope of coverage to prevent [West American] from further expenditures of time, energy, and resources in the state court action that, in [West American's] view, are unwarranted." (JA 60.)

In *Odom*, this Court concluded that the third factor weighed in favor of exercising jurisdiction because there was "no evidence that State Farm [had] done any more than properly choose the jurisdiction of federal rather than state court, a choice given by Congress." 799 F.2d at 250. In reaching its conclusion, that the case did not "present the appearance of a race for res judicata," this Court considered the fact that "Bituminous filed its action in federal court two years after Shields [the injured employee] filed his initial negligence action against J & L in state court." *Bituminous*, 373 F.3d at 814. Similarly, in this case, West American filed its action in federal court

approximately one year after Hensley filed his state-tort action.[1]

The liability issues before the state court are distinct from the issue of insurance coverage in the declaratory relief action. Because the two issues rest on different facts, resolution of one issue does not preclude the separate adjudication of the other. Further, West American is not a party to the state suit and the scope of Prewitt's insurance coverage is not at issue in the state action. Accordingly, the district court properly determined that the third factor weighed in favor of exercising jurisdiction.

> *Factor 4: Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction*

The district court found that the fourth factor also weighed in favor of exercising jurisdiction. In reaching this conclusion, the court considered the three additional sub-factors from *Scottsdale* addressing federalism concerns. The district court found that the first sub-factor—whether the underlying factual issues are important to an informed resolution of the case—weighed in favor of exercising jurisdiction. Prewitt argues that the underlying state action and the declaratory judgment action involve the same factual issues, such as: (1) the state of disrepair of certain navigational equipment on the sailboat, and (2) whether Hensley unilaterally decided to turn off lighting to critical navigational instruments. The district court, however, found that resolution of these factual issues was not relevant to the insurance-coverage dispute.

The district court's conclusion is supported by this Court's decisions in *Odom*, *Northland*

---

[1]Hensley filed his state-court suit against Prewitt on October 14, 2003 and West American filed its action in federal court on November 15, 2004.

*Insurance*, and *Green*—all cases where this Court concluded that the facts needed to resolve the insurance dispute were independent of the facts involved in the state-tort action. Further, the facts that are relevant to the insurance coverage controversy here are not in dispute. As the district court noted, "Prewitt admits to having been a 'passenger and guest on the sailboat and even, occasionally at Hensley's request, sail[ing] the vehicle.'" (JA 62.) Given Prewitt's deposition, it is fair to say that Prewitt sailed the boat more than just "occasionally." Prewitt testified that he was along on the trip because Hensley needed someone to help him sail. According to both Prewitt and Hensley, they were taking turns sailing the boat—"four hours on and four hours off." Thus, the district court did not err in finding that the first sub-factor weighed in favor of exercising jurisdiction.

With regards to the second sub-factor—whether the state trial court is in a better position to evaluate those factual issues than is the federal court—the district court concluded that it also weighed in favor of exercising jurisdiction because there were no factual disputes. Prewitt argues that because the discovery process in state court is longer, a state court will be better able to determine the factual issues. (Appellant's Br. 22-23.) Prewitt, however, does not point to a specific reason why he needs a longer discovery period, rather he merely argues that discovery in the state court is still ongoing while discovery in the district court lasted 90 days. (*Id.*) Further, the district court had all the facts necessary to make a determination as to whether Hensley's boat was in Prewitt's care. Disputes over whether certain navigational instruments were in disrepair or whether necessary lights were turned off to conserve electricity (although the subject of discovery in the state action) are not relevant to a determination of whether Prewitt's conduct falls within the language of the exclusion provision.

Prewitt also argues that the declaratory relief action involves the same underlying factual issues pending in the state-tort action. Prewitt's argument is incorrect. There is very little overlap between the facts that are relevant to the state-tort action and the facts that are relevant to the declaratory relief action. Prewitt admits to being at the helm at the time of the accident and to operating the boat during the trip in alternating four-hour shifts. Prewitt even admits that, except for the night of the accident, Hensley had previously never given Prewitt a specific course to sail. These are the only facts relevant to the insurance coverage controversy and they are undisputed. Therefore, the district court's conclusion regarding the second sub-factor was correct.

The district court found that the third sub-factor—whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action—weighed against an exercise of jurisdiction over the declaratory action. The court correctly noted that "the insurance coverage issue is governed solely by Kentucky law."

Ultimately, the district court concluded that despite the absence of Kentucky law interpreting a similar exclusion, because the other two sub-factors weighed in favor of exercising jurisdiction, a declaratory judgment is unlikely to create friction between the state and federal courts. Thus, the court found that, overall, the fourth factor weighed in favor of exercising jurisdiction. This Court has explained that the existence of an unresolved question of state law does not automatically mean that the district court cannot exercise jurisdiction over the declaratory action. In *Scottsdale*, for instance, this Court noted that "a district court should [not] always turn away a declaratory judgment action when an undetermined question of state law is presented." 211 F.3d at 969. Further, in

*Bituminous*, a case where this Court found it inappropriate to exercise jurisdiction over the declaratory action, this Court explained that "a district court should not necessarily refuse to exercise jurisdiction because a case involves undetermined questions of state law." 373 F.3d at 815. Accordingly, we cannot conclude that the district court abused its discretion when it determined that the fourth factor as a whole weighed in favor of exercising jurisdiction, given that two out of the three sub-factors also favored an exercise of jurisdiction by the district court.

*Factor 5: Whether there is an alternative remedy that is better or more effective*

The district court concluded that Kentucky does provide a procedure for a declaration of rights. Under KRS § 418.040, "[i]n any action . . . wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked." The court thus found that the fifth factor weighed against an exercise of jurisdiction. In *Bituminous*, this Court noted that "a superior alternative remedy exists in the form of an indemnity action filed at the conclusion of the underlying state action." 373 F.3d at 816. In this case, the state court is a better forum because there is no federal interest triggered by this litigation. The action is in federal court based on diversity jurisdiction, there is no federal question involved, and the federal court is applying state law. Thus, the district court correctly concluded that the fifth factor weighed against the exercise of jurisdiction.

Because four out of the five factors clearly weigh in favor of the district court's exercise of jurisdiction, we conclude that the district court did not abuse its discretion in exercising jurisdiction over West American's action for declaratory relief.

- 12 -

**C.      Summary Judgment for West American Was Appropriate**

The district court correctly granted summary judgment for West American, finding that there were no disputed issues of material fact.  The court found that the following facts were not in dispute: (1) the time-line of the accident; (2) the parties shared time at the helm into four-hour shifts; (3) at the time of the accident, Prewitt was steering the sailboat and Hensley was asleep below deck; (4) Prewitt was responsible for setting the course to sail during his four-hour shift at the helm; (5) Prewitt was not required to consult Hensley if it was necessary to make a change to the sailboat's course because of an unexpected condition; and (6) on the night of the accident, Hensley gave Prewitt a specific course to follow.

The district court concluded that the exclusion provision in Prewitt's insurance policy applied because Hensley's boat was in Prewitt's "care," as required by the provision.  The district court reasoned that, because Hensley was asleep at the time of the accident, the only individual responsible for the boat's safety at that time was Prewitt, who was at the helm.  According to the court, "the reason that Hensley needed a second person on board for ocean sailing was that he *could not* be responsible for the safe operation of the boat twenty-four hours a day." *Prewitt*, 401 F. Supp. 2d at 786.

Based on the Kentucky Supreme Court's decision in *Kemper National Insurance Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869 (Ky. 2002), the district court did not err in concluding that Hensley's boat was in Prewitt's care at the time of the accident.  In *Kemper*, Heaven Hill sold bourbon to its customers and was still storing the bourbon in its warehouse for those customers when a fire destroyed the bourbon.  Heaven Hill claimed that its insurance policy with Kemper, which

contained a similar exclusion provision to the one at issue here, covered the losses it suffered from having to pay damages to its customers for the bourbon that was destroyed. Like the situation in *Kemper* (where Heaven Hill's employees were in control of the bourbon at the time of the fire), Prewitt was in control of the boat at the time of the accident. It is undisputed that Prewitt was driving the boat when it crashed into the reef, that Prewitt was solely responsible for the safety of the boat during his four-hour shifts at the helm, that Prewitt, during those shifts, was free to make all necessary decisions without first consulting Hensley, and that Hensley was not supervising Prewitt's actions while Prewitt was at the helm. The court in *Kemper* made clear that "[w]here the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." 82 S.W.3d at 873. Therefore, based on the unambiguous meaning of the exclusion provision in Prewitt's insurance policy, and undisputed evidence that Prewitt was in control of the boat, not only at the time of the accident, but on numerous occasions before the accident, the district court properly concluded that Hensley's boat was in Prewitt's care.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's exercise of jurisdiction over the declaratory relief action and the court's grant of summary judgment for West American.