**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0639n.06

**No. 18-5267**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>MASSACHUSETTS BAY INSURANCE<br>COMPANY,<br><br>    Plaintiff-Appellant,<br><br>    v.<br><br>CHRISTIAN FUNERAL DIRECTORS, INC., et<br>al.,<br><br>    Defendants-Appellees.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>**FILED**<br>Dec 26, 2018<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE WESTERN<br>DISTRICT OF TENNESSEE</td></tr>
</table>

**BEFORE: GUY, WHITE, and STRANCH, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**

Defendant-Appellee Christian Funeral Directors, Inc. (Christian Funeral), and other funeral homes were sued in Tennessee state court by the more than 180 individual defendants-appellees (individual defendants) in this case. In the underlying state-court actions, the individual defendants allege that a cemetery, Galilee Memorial Gardens (Galilee), improperly disposed of bodies; they sued Christian Funeral and other funeral homes for failing to discover or prevent Galilee's wrongful acts. Plaintiff-Appellant Massachusetts Bay Insurance Company (Massachusetts Bay) is one of two liability insurers defending Christian Funeral in the state-court actions. After the state-court actions had proceeded for several years, Massachusetts Bay filed this action, requesting a declaratory judgment determining its coverage and indemnification obligations. The district court declined to exercise jurisdiction and Massachusetts Bay now appeals. We affirm.

## I.     BACKGROUND

### A.  The State-Court Actions

Christian Funeral is a Tennessee funeral home named as a defendant in several state-court lawsuits for its involvement with Galilee.  The State of Tennessee filed a Petition for Appointment of the Commissioner of the Department of Commerce & Insurance as Receiver for Galilee in January 2014.  That petition alleged that Galilee was operated as a cemetery without a valid certificate of registration from December 2010 through January 2014; that Galilee continued to sell burial plots through late-2013 even though all available burial sites had been "taken" by 2010; and that between December 2010 and January 2014 Galilee improperly buried bodies by placing two or more bodies in the same grave, damaged caskets by digging graves too closely together, and buried bodies on adjoining land owned by third parties  (R. 1, PID 22-23.)  The Tennessee court in that case entered a temporary restraining order and granted the petition for appointment of receiver.

Several additional state-court lawsuits ensued.  Christian Funeral and other funeral homes were named as defendants in those lawsuits, which alleged various claims including breach of contract; negligent misrepresentation; intentional, reckless, and negligent mishandling of bodies; negligence; recklessness; fraud; intentional and/or negligent infliction of emotional distress; breach of fiduciary duty; and punitive damages.  (R. 1, PID 24-27.)[1]  One of these lawsuits was eventually certified as a class action, a decision that has now been affirmed on appeal.  *See Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 528 S.W.3d 524 (Tenn. Ct. App. 2017), *appeal*

---

[1] Because there are no pleadings or other filings in the record from the state-court actions, most of the information included about the state-court actions is taken from assertions or allegations made in filings before the district court or on appeal.

*denied* (Aug. 18, 2017). According to Massachusetts Bay, "[a]ll but two of the other lawsuits have now been consolidated with *Wofford*." (Appellant's Br. at 7.)

## B. This Action

Massachusetts Bay issued a Business Owners Insurance Policy to Christian Funeral for successive policy periods from February 18, 2010 – February 18, 2013. Pursuant to those policies, Massachusetts Bay is providing a defense to Christian Funeral in the state-court actions under a reservation of rights that includes the right to seek a no-coverage determination and withdraw from defending Christian Funeral.

Massachusetts Bay filed this declaratory judgment action in February 2017, naming Christian Funeral and more than 180 individuals—all of whom are plaintiffs in one of the state-court actions—as defendants. Massachusetts Bay's complaint alleged in Count I that it had no duty to defend or indemnify Christian Funeral in connection with any claims stemming from the burials of persons who died after February 18, 2013, the date the last Massachusetts Bay policy expired; and that its policies did not provide coverage for any claims of emotional distress or mental anguish because the improper burials were discovered after February 18, 2013. In Count II, Massachusetts Bay alleged that even if coverage was initially available under the policies, at least six exclusions restrict or eliminate that coverage.

Massachusetts Bay requested that the district court "declare the rights and obligations under the insurance contracts and determine that the Massachusetts Bay policies provide no coverage for, and Massachusetts Bay owes no duty to defend or indemnify in connection with, the underlying actions." (R. 1, PID 40.) Massachusetts Bay also sought a judgment allowing it to withdraw from defending Christian Funeral in the state-court actions and requiring Christian Funeral to reimburse Massachusetts Bay for its costs.

The individual defendants moved to dismiss, arguing (1) lack of diversity jurisdiction because one defendant was a resident of Massachusetts, the state where Massachusetts Bay is incorporated; and (2) that the district court should exercise its discretion to decline jurisdiction pursuant to 28 U.S.C. § 2201, which provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Christian Funeral later filed its own motion to dismiss on the same grounds. Massachusetts Bay responded by voluntarily dismissing the single individual defendant who purportedly was a resident of Massachusetts, which the district court held "achieved complete diversity" (R. 44, PID 658). The district court then analyzed whether it should decline to accept jurisdiction by examining the five factors articulated in *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

746 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks and citation omitted). The district court found that the first three factors weighed in favor of exercising jurisdiction but the last two factors weighed against it. In balancing the factors, the district court determined that the fourth factor carried the most weight, reasoning that the "state court judges have made numerous factual findings, including those involving Christian [Funeral] and each individually named defendant in this case," and that factual findings by the district court could be in conflict with or duplicative of findings made in state court. (R. 44, PID 664.) "In order to avoid encroachment upon a state court that is in a better position to evaluate the legal and factual questions presented in the case at hand," the district court declined jurisdiction. (*Id.* at PID 664-65.)

4

This appeal followed.

## II.    DISCUSSION

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). "The Supreme Court has indicated that this act 'confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (alteration in original) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). We therefore review a district court's decision to take jurisdiction over a declaratory judgment action for abuse of discretion. *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014) (citing *Flowers*, 513 F.3d at 554). To "guide the exercise of discretion," we have identified five factors to consider, one of which contains three subfactors:

> (1) Whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]
> > a. whether the underlying factual issues are important to an informed resolution of the case;
> > b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> > c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and
> (5) whether there is an alternative remedy which is better or more effective.

*Id.* at 759 (alteration in original) (quoting *Flowers*, 513 F.3d at 554, 560).

We address each factor in turn.

## A. Factor One: Settlement of the Controversy

The first factor examines whether the declaratory judgment action will settle the controversy. "Two lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Flowers*, 513 F.3d at 555. One line of cases focuses on whether the declaratory judgment action will settle the coverage controversy regardless whether it will settle the underlying state-court action. *See id.* (citing *West Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 396 (6th Cir. 2006); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986)).[2] The other line of cases reasons that "while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citing *Travelers Indem. Co. v. Bowling Green Prof. Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 565 (6th Cir. 2006); *Bituminous Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Odom*, 799 F.2d at 251 (Merritt, J., dissenting); *Grand Trunk*, 746 F.2d at 326).

In *Flowers*, we suggested that "the difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible. However, the contrary results in

---

[2] Prior to the Supreme Court's decision in *Wilton*, 515 U.S. at 289-90, which established an abuse-of-discretion standard of review, this circuit reviewed de novo a district court's decision to take jurisdiction over a declaratory judgment action, *see, e.g.*, *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462 (6th Cir. 1986).

these cases might also be explained by their different factual scenarios." *Id.* at 555. We went on

to discuss the factual differences between *Bituminous* and *Northland* to support this point:

> In *Bituminous*, for example, the insurance company sought a declaration that it was not required to defend or indemnify the defendant in a state court action based on a logging accident which injured one of its employees. 373 F.3d at 808. In evaluating this first discretionary factor, we focused on the fact that the insurance coverage controversy rested on a fact-based question of state law regarding whether the plaintiff in the state action was actually an employee of the defendant. *Id.* at 813. We noted that the question of employment status was already being considered in two separate state court proceedings. *Id.* We also registered our concern that the plaintiff in the state tort action "was not made a party to the declaratory judgment action [and thus] any judgment in the federal court action would not be binding as to him and could not be res judicata in the tort action." *Id.* at 814. Considering these facts, we found that "a declaration of insurance coverage would not resolve the controversy." *Id.*
>
> In *Northland* we did not face similarly troubling facts. The plaintiff in that case sought a declaration of no duty to defend or indemnify the insured title company against a title insurance underwriter's state court claims for embezzlement and conversion. 327 F.3d at 449. In determining that the exercise of jurisdiction was proper, we noted that the plaintiff "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id.* at 454. We relied on these facts to find that a declaratory judgment would resolve the insurance coverage controversy and would clarify the legal relations at issue. *Id.*

*Id.* at 555-56. Applying this reasoning, *Flowers* held that the district court's declaratory judgment

settled the controversy: the district court in that case addressed only whether the insurance policy

covered the therapist who had an affair with a patient; the insurer was not a party to the state-court

action; the issue involved only a legal, not factual, dispute about whether the therapist's affair with

a  patient was outside the scope of his employment; and the issue did not require the district court

to inquire into matters addressed or developed in state court. *See id.* at 550-51, 556.

The district court in this case applied *Flowers* and found that the declaratory judgment

action would settle the controversy because "[h]ere, like the plaintiff in *Flowers*, Mass. Bay only

seeks to determine if Christian [Funeral] is covered by Mass. Bay policies and Mass. Bay is not a

named party to the state action." (R. 44, PID 660.) On appeal, Defendants argue that the district

court should have followed the other line of cases "based upon the factual nuances of this matter, which include naming numerous individual parties to the action." (Appellees' Br. at 19.)

In *Travelers*, 495 F.3d at 271-74, decided six months prior to *Flowers*, we held that the district court abused its discretion by exercising jurisdiction over a declaratory judgment action brought by two insurers against an insured regarding the insurers' indemnity and defense obligations in an underlying state-court action. The underlying state-court action in *Travelers* arose out of a fatal car accident. *Id.* at 268. The driver of the at-fault vehicle (Wampler) received a methadone treatment from a doctor at Bowling Green Professional Associates, an out-patient drug-treatment facility, and then hit another vehicle with his car, killing the other driver (Caudill) and himself. *Id.* Caudill's estate filed suit against Bowling Green and Wampler's estate, and Wampler's estate asserted a third-party claim against Bowling Green and Wampler's physician. *Id.* at 268-69. After Bowling Green sought defense and indemnification from two of its liability insurers (Evanston and Travelers), Travelers filed a declaratory judgment action regarding its coverage obligations, and Evanston cross-claimed seeking a similar declaration. *Id.* The district court exercised jurisdiction and granted a declaratory judgment in favor of both insurers. *Id.* This court sua sponte raised the discretionary-jurisdiction issue at oral argument and reversed the district court's exercise of jurisdiction. *Id.* at 271. As to the first two factors, the court reasoned:

> Granting the declaratory relief sought by Evanston and Travelers settles the scope of insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to settle the controversy or "clarify the legal relationship" between the other parties. Significantly, parties who may be potentially affected by the judgment, including the estates of Wampler and Caudill, were not joined in the federal district court action and are not parties now. As non-parties, the estates of Wampler and Caudill are not bound by the entry of a declaratory judgment. Thus, we conclude that the first two factors weigh against federal jurisdiction.

*Id.* at 272. The *Travelers* court thus decided that the first two factors weighed against exercising jurisdiction without articulating any concern about the federal court addressing issues that were

being litigated in state court, as the court did in *Bituminous*. Although the court in *Travelers* noted that parties who "may be potentially affected by the judgment" were not parties in the district court, *id.*, the same is true here; at least one plaintiff in the state-court actions was dismissed from this lawsuit to obtain complete diversity. And the *Flowers* case itself did not include all parties in the state-court action as parties in the declaratory judgment action. *See Flowers*, 513 F.3d at 550 (noting that the insured was not a party in the declaratory judgment action).

The district court considered our sometimes conflicting case law and determined that this case was like *Flowers* in material ways. The district court was within its discretion to do so. At the same time, its implicit decision to give this factor less weight was also reasonable.

### B. Factor Two: Clarification of the Legal Relations at Issue

The second factor asks whether the declaratory judgment action will clarify the legal relations at issue. *Flowers*, 513 F.3d at 556. "[A]s with the jurisprudence concerning the first factor, a split has developed in our precedent concerning whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id.* at 557.

In general, courts tend to consider this factor with the first factor, reaching the same conclusion for both. *Compare, e.g.*, *Bituminous*, 373 F.3d at 814 ("Like the first factor, although a declaratory judgment would clarify the legal relationship between Bituminous and J & L pursuant to the insurance contracts, the judgment would not clarify the legal relationship between Shields and J & L in the underlying state action."), *with Northland*, 327 F.3d at 454 ("[W]hile the declaratory judgment would not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds. [A] prompt declaration of policy coverage would

surely serve a useful purpose in clarifying the legal relations at issue." (second alteration in original) (internal quotation marks and citation omitted)). Some cases, however, have treated this factor as distinct from the first factor, reasoning that the first factor examines whether the declaratory action will resolve the coverage dispute as well as the underlying action, whereas this factor is focused just on the insurance-coverage dispute. *See Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990).

Here, the district court found that "the only legal relationship presented to the Court is whether [the] Mass. Bay policy will cover actions taken by Christian [Funeral]. A declaratory judgment on insurance coverage squarely clarifies that relation thereby pointing in favor of the Court exercising jurisdiction over the declaratory judgment." (R. 44, PID 661.) The district court properly exercised its discretion in making this determination.

## C. Factor Three: Procedural Fencing

The third factor asks whether "the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326 (citations omitted). The term "procedural fencing" "has come to encompass a range of tactics that courts regard as unfair or unseemly." *Hoey*, 773 F.3d at 761 (citation omitted). Primarily, "[t]he third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). "We are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.*

Here, the district court found that there was no evidence of procedural fencing, reasoning that Massachusetts Bay waited three years after the state-court litigation began to file this suit.

Defendants initially dispute this conclusion, arguing that Massachusetts Bay is forum shopping and that the three-year delay "allowed Mass. Bay to evaluate the state court forum and make a tactical decision that the merits of the declaratory judgment would be more favorable in another forum." (Appellees' Br. at 21.) Ultimately, however, Defendants concede that "the District Court was within its discretion to find the factor supported accepting jurisdiction," but they argue that it should be given "very little weight." (*Id.*)

The district court's conclusion is consistent with our precedent, as there is no evidence in the record that Massachusetts Bay had any improper motive or engaged in any unfair tactics. Filing a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself. *See Flowers*, 513 F.3d at 558 ("While this action may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives Scottsdale the right to do precisely that, especially when the state court litigation has been ongoing for several years without resolving the issue."). However, there is also support for Defendants' argument that this factor should be afforded little weight in cases where, as here, there is no evidence of procedural fencing. *See Travelers*, 495 F.3d at 272 ("With respect to the third factor, the district court determined correctly that no facts demonstrate that the declaratory judgment action by Travelers was an attempt at 'procedural fencing' or exude the appearance of a 'race' to judgment. Although no improper motive prompted this action, this factor is neutral."). Consistent with that authority, the district court appeared to give this factor little weight in its balancing of the factors. This, too, was not an abuse of discretion.

### D. Factor Four: Increased Friction Between Federal and State Courts

The fourth factor considers whether accepting jurisdiction would increase friction between federal and state courts. To make this determination, we look at three additional subfactors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560 (citing *Bituminous*, 373 F.3d at 814-15).

There is very little information in the record about the state-court actions. Nor has there been any briefing regarding the issues likely to be in dispute in this action. It is therefore difficult to determine which underlying factual issues, if any, are important to an informed resolution of this case. Nevertheless, Massachusetts Bay acknowledges several times in its principal brief that facts relevant to the scope of coverage might be at issue in the underlying state-court actions. (*See* Appellant's Br. at 12 ("Dates of actual injury may be decided in the state court proceedings and if so, those dates would determine Christian Funeral's coverage under the Massachusetts Bay policy. Only if dates of injury are not established in state court, which is possible in light of the class action, those dates would be decided here."); *id.* at 13 ("The state court actions will almost certainly determine whether Christian Funeral knew about the state of affairs at Galilee Memorial because that's an element of the wrongful act alleged by some. The declaratory judgment action would only decide whether coverage is excluded based on that finding."); *id.* ("Other exclusions might also apply, depending on the findings issued in the state court actions."); *id.* at 21 ("Most of the facts pertaining to coverage are undisputed (such as the date defendants learned of the cemetery's mismanagement). And to the extent facts relevant to coverage are disputed, they will be resolved in the liability litigation (such as Christian Funeral's knowledge or intent) or if not, in this action as needed.").) Thus, it appears that this case is dependent on factual findings by the state court, which weighs against exercising jurisdiction. *See Flowers*, 513 F.3d at 560 ("The first of these

sub-factors focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action.").

The second subfactor focuses on whether the federal or state court is in a better position to resolve the declaratory judgment action. In general, states are in a better position to resolve insurance issues governed by state law. *See Flowers*, 513 F.3d at 560; *Travelers*, 495 F.3d at 273. When there are novel issues of state law, this subfactor leans even more heavily against federal courts exercising jurisdiction. *See Flowers*, 513 F.3d at 560. It is not clear whether any novel issues of state law will be presented in this case. Neither the district court nor Defendants have identified any such issues. However, because only a complaint and motions based on jurisdictional or procedural issues have been filed in this case, and there is almost nothing in the record from the state-court actions, the full universe of issues that the district court might have to decide—and how those issues interact with the state-court actions—is unclear.

The third subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. We often recognize that state courts are better positioned to resolve insurance disputes because they are more familiar with the governing laws, and those laws are enacted to protect the citizens of the state. *See id.* at 560; *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 915. *But see Northland*, 327 F.3d at 454 ("However, no state law or policy would be frustrated by the district court's exercise of jurisdiction, which would require the application of Michigan law. The district court's exercise of jurisdiction would not create friction between the state and federal courts."). Finally, no federal laws are at issue. This, likewise, weighs against exercising jurisdiction. *See Bituminous*, 373 F.3d at 816.

The district court found that this factor "strongly suggests the [district court] should decline jurisdiction." (R. 44, PID 664.) The district court reasoned that "this matter has been ongoing in state court for many years and state court judges have made numerous factual findings, including those involving Christian and each individually named defendant in this case. Factual findings by this Court could be in conflict and would be duplicitous [sic] with those in state court." (*Id.* at PID 663-64.) As Massachusetts Bay argues, this explanation is not particularly helpful because the district court does not identify any factual findings it would be required to make that might conflict with the state court's. But the district court can be forgiven for this omission given the early stage of this case and the absence of any meaningful state-court record. The state-court actions potentially involve hundreds of plaintiffs and will likely require the resolution of numerous factual and legal issues. As Massachusetts Bay itself concedes, some of the issues that are likely to arise in state court will have an impact on the determination of coverage. Under these circumstances, and considering the highly deferential standard of review, the district court's determination that this factor weighs strongly against exercising jurisdiction was not an abuse of discretion. *See Mercier*, 913 F.2d at 278-79 (reversing district court's exercise of jurisdiction where the "record before [the court] [wa]s virtually devoid of facts about the underlying tort action" and those facts "may have a direct bearing on the [coverage] determination").

### E. Factor Five: Availability of Alternative Remedy

The fifth factor examines "whether there is an alternative remedy which is better or more effective." *Grand Trunk*, 746 F.2d at 326. The district court found that this factor weighed against exercising jurisdiction because "Mass. Bay could have just as easily filed a comparable suit in state court to determine insurance coverage. As noted by Defendants, Tennessee provides a clear and

concise avenue for a plaintiff's declaratory judgment action to proceed through Tenn. Code Ann. § 29-14-101 [*et seq.*] and Tenn. R. Civ. P. 57." (R. 44, PID 664.)[3]

Massachusetts Bay does not dispute that it could have filed a declaratory judgment action in state court. Rather, it argues that the district court erred in its analysis because the district court merely identified an alternative remedy, but not one that was *superior*. (Appellant's Br. at 31-32; Reply Br. at 4-6.)[4] Similar to the other factors in this analysis, case law is somewhat inconsistent within this circuit. *See Flowers*, 513 F.3d at 562 ("As with the first two factors, our precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction." (citations omitted)). Nevertheless, the district court did not abuse its discretion in finding that this factor weighed against exercising jurisdiction. Tennessee courts are in a superior position to resolve questions of state law, including any that may arise that may be unsettled, and the Tennessee courts "might also have been able to combine the two actions so that all issues could be resolved by the same judge."

---

[3] Tennessee Code Annotated § 29-14-102 provides:

> (a) Courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.
> (b) No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for.
> (c) The declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree.

Tennessee Rule of Civil Procedure 57 provides:

> The procedure for obtaining a declaratory judgment pursuant to Tennessee Code Annotated, § 23-1101 et seq., shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not necessarily preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar.

[4] Massachusetts Bay also summarily argues that filing in state court may not lead to an independent review of its coverage obligations because the underlying actions "may evoke passion or sympathy or prominent media attention." (Appellant's Br. at 30.) This conclusory statement, without more, cannot establish that the state forum would not adequately protect Massachusetts Bay's interests.

*Id.* Thus, "[t]here is no reason to suppose that the alternate remedies available in state court would not adequately protect [Massachusetts Bay's] interests." *Bituminous*, 373 F.3d at 816.

## F. Balancing of the Factors

"[W]e have never indicated how these *Grand Trunk* factors should be balanced when reviewing a district court's decision for abuse of discretion." *Flowers*, 513 F.3d at 563. "The essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Hoey*, 773 F.3d at 759.

We have been reluctant to reverse a district court's decision to decline jurisdiction. Indeed, Massachusetts Bay does not cite a single case where we have done so using an abuse-of-discretion standard of review in a coverage dispute such as this. For example, in *Scottsdale Insurance Co. v. Roumph*, we determined that factors one, two, three, and five clearly weighed in favor of exercising jurisdiction and doubted that exercising jurisdiction "would have constituted gratuitous interference with the orderly and comprehensive disposition of a state court litigation." 211 F.3d 964, 968 (6th Cir. 2000) (internal quotation marks and citation omitted). Nonetheless, because there were no reported decisions in Michigan on the sexual-misconduct endorsement at issue, we reasoned that ruling on this issue "might, of course, 'increase the friction between our federal and state courts.'" *Id.* at 969. Before determining that the district court did not abuse its discretion, we block quoted a pertinent excerpt from *Wilton*:

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) (1988 ed., Supp. V) (emphasis added). The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.... When all is said

> and done, we have concluded, "the propriety of a declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power."
>
> ....
>
> We agree, for all practical purposes, with Professor Borchard, who observed half a century ago that "[t]here is ... nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court" to hear a declaratory judgment action. By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.

*Id.* (alterations in original) (internal citations omitted) (quoting *Wilton*, 515 U.S. at 286-88). We concluded: "[T]he district court properly considered the circumstances involved in whether to exercise its discretion to issue a declaratory judgment in a dispute pending in state court. It exercised its discretion not to entertain the case. In reaching that result, we cannot say that the district court did not employ 'the sound exercise of its discretion' under the circumstances." *Id.* (citing *Wilton*, 515 U.S. at 288).

In *Hoey*, we found no abuse of discretion by the district court in its conclusion that the first four factors weighed in favor of exercising jurisdiction, and, regarding the fifth factor, explained that "a federal court was not 'a clearly inferior forum to resolve the issue.'" 773 F.3d at 760-61 (citation omitted). We thus affirmed the district court's decision to exercise jurisdiction. Earlier in the opinion, however, we suggested that we would not have found an abuse of discretion if the district court had *not* exercised jurisdiction: "In the present case, the district court succinctly considered each of the 8 factors (the five *Grand Trunk* factors plus the three sub-factors) and concluded that the benefits of taking jurisdiction outweighed the costs. Another court might have made a different choice—some judges regularly decline jurisdiction in cases like this." *Id.* at 760.

The district court here identified the proper standard, analyzed the five pertinent factors, and issued a reasoned opinion declining jurisdiction. Although other courts may have reached a

different result, the district court did not abuse its substantial discretion in declining jurisdiction. *See id.* at 760-61.

## III.    CONCLUSION

For the reasons set out above, we affirm.